LIZA FERRER GARCÍA, demandante y recurrida, *v.* JUAN ALBERTO GONZÁLEZ, demandado y peticionario.

Número: AC-2002-32     Resuelto: 15 de junio de 2004

*María de Lourdes Guzmán*, abogada de la parte peticionaria; *Maritza Miranda López*, abogada de la parte recurrida.

LA JUEZA PRESIDENTA SEÑORA NAVEIRA MERLY emitió la opinión del Tribunal.

El caso ante nuestra consideración se inició mediante una petición de filiación y alimentos presentada por la Sra. Liza Ferrer García contra el Sr. Juan Alberto González el 26 de febrero de 1996. El Tribunal de Primera Instancia declaró con lugar la demanda y le impuso al señor González el pago de una pensión alimentaria provisional de dos mil quinientos dólares mensuales a favor del menor I.A.F. Inconforme con dicho dictamen, el señor González acudió al Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones), el cual confirmó la determinación de instancia.

El 14 de febrero de 2000, la señora Ferrer García presentó una moción para que se señalara una vista para determinar la pensión alimentaria de su hijo. El foro de instancia ordenó al señor González exponer su posición en torno a la vista solicitada. Éste sostuvo que "$2,500.00 es una suma más que suficiente para un menor que aún no está en la escuela". Se opuso, además, a que la pensión fuera aumentada por entender que esto no era necesario. El 30 de agosto de 2000 presentó una moción en la que aceptaba tener la capacidad económica para satisfacer una pensión alimentaria razonable, "por lo que no esta[ba] obligado bajo la Ley para el Sustento de Menores a descubrir sus ingresos".

Luego de un extenso y azaroso trámite procesal, en el que las partes presentaron varias mociones relacionadas con el descubrimiento de prueba, el tribunal de instancia determinó que tenía discreción para extender el período de descubrimiento de prueba entre las partes y que no podía acceder a dar por terminado en cuanto a una parte y mantenerlo en cuanto a otra. Resolvió, además, que permitiría el descubrimiento de prueba sobre el estilo de vida del señor González para tomarlo en consideración al determinar

la pensión alimentaria del menor, ya que "esto no causa perjuicio alguno al demandado".

En vista de lo anterior, el foro de instancia le ordenó al señor González, así como a Salomóm Smith & Barney, Inc. y a cualquier persona o entidad en posesión de los documentos solicitados, lo siguiente:

> A que provean copia fiel y exacta de los estados bancarios mensuales para los años 1999, 2000, 2001 de todas las cuentas de cualquier naturaleza, incluyendo la cuenta número 720-25480-17 014 y cualesquiera otra de cheques o que permita el retiro de dinero mediante cualquier mecanismo por parte el demandado (o persona autorizada) para sus gastos, que exista o haya existido de forma individual o mancomunada a nombre Juan González. Conjuntamente con el estado mensual, deberá proveerse los cheques cancelados o la evidencia del uso dado al dinero retirado.

Inconforme con esta orden, el señor González presentó un recurso de *certiorari* ante el Tribunal de Apelaciones en el que alegó que el tribunal de instancia erró al permitir este descubrimiento de prueba. Arguyó que conforme a la normativa establecida en *Chévere v. Levis*, 150 D.P.R. 525 (2000) (*Chévere v. Levis I*), cuando un padre alimentista acepta la capacidad económica para satisfacer una pensión alimentaria razonable, es improcedente el descubrimiento de prueba dirigido a determinar la capacidad económica del alimentante para proveer alimentos. El Tribunal de Apelaciones confirmó el dictamen recurrido, fundamentándose en que "siendo el estilo de vida del demandado peticionario pertinente a la controversia de autos, entonces el uso del dinero que reflejen las cuentas de éste son indispensables para que el tribunal recurrido pueda emitir un dictamen justo sobre la pensión alimentaria para el menor conforme a la doctrina vigente".

Inconforme, el señor González acudió ante este Tribunal, alegando la comisión del error siguiente:

> Erró el Tribunal de Circuito de Apelaciones al interpretar que *Chévere v. Levis II*, tiene el alcance de obligar al alimentante

que acepta capacidad económica a someterse a un descubrimiento de prueba donde tenga que entregar copia de todos sus estados de cuenta y cheques cancelados.

En síntesis, debemos resolver si en circunstancias en las cuales un padre no custodio acepta tener la capacidad económica para proveer una pensión alimentaria de acuerdo a con las necesidades razonables de sus hijos, éste tiene el deber de proveer copia de los estados mensuales de todas sus cuentas bancarias de cualquier naturaleza, a los fines de determinar su estilo de vida.

Con el beneficio de los argumentos de las partes, procedemos a resolver.

## II

Sabido es que los casos de alimentos a hijos menores de edad están revestidos del más alto interés público. *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785, 732 (1993); *López v. Rodríguez*, 121 D.P.R. 23, 28 (1988); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 72 (1987). La Ley Orgánica de la Administración de Sustento de Menores (Ley para el Sustento de Menores), 8 L.P.R.A. sec. 501 *et seq.*, se aprobó con el propósito de

> ... procurar que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de los hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. 8 L.P.R.A. sec. 502.

La aprobación de esta ley obedeció al problema apremiante que el Estado confrontaba, y aún confronta, referente al incumplimiento de las obligaciones morales por parte de uno o ambos padres de alimentar a sus hijos. En ocasiones esto ha conllevado que el propio Estado haya tenido que asumir dicha responsabilidad y la carga económica de alimentar a los menores.

Hemos reconocido que esta legislación va dirigida a aquellas personas que tienen la obligación de alimentar y que, por alguna razón, se niegan a cumplir con su responsabilidad. *Es precisamente la negativa a aceptar voluntariamente la capacidad económica, la que activa el uso de los mecanismos dispuestos por la ley para descubrir la información relacionada a los ingresos y poder determinar así la capacidad económica del alimentante. Chévere v. Levis I*, supra.

El Art. 16 de la Ley para el Sustento de Menores, 31 L.P.R.A sec. 515, hace compulsorio el descubrimiento sobre la situación económica del alimentante en casos relacionados con las pensiones alimentarias, para poder fijar la cuantía que se ha de pagar. Establece, además, que "[e]n los procedimientos relacionados con pensiones alimenticias [sic], el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio". Íd. Sobre este particular, en *Chévere v. Levis I*, supra, pág. 544, establecimos lo siguiente:

> ... [E]l propósito de dicha legislación es descubrir la suficiencia económica del llamado a alimentar para, conforme a ello, establecer una pensión alimentaria. Es decir, la legislación se activa *afirmativamente* cuando el obligado a alimentar se negare a aceptar o esté en duda su capacidad económica. Ahora bien, *cuando este último fomenta la política del estado de "paternidad voluntaria" y admite capacidad económica, no es necesario que divulgue sus ingresos. Más aún, cuando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias.* Por consiguiente, cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley.([1]) (Énfasis suplido y en el original.)

---

([1]) En este caso la señora Chévere le cursó al señor Levis un aviso de deposición dirigido a descubrir su capacidad económica y *estilo de vida* a los fines de fijar la pensión alimentaria para sus hijos.

■ En la citada decisión establecimos que un alimentante queda exento del requisito de someter información sobre sus ingresos en la planilla de información personal y económica si acepta que tiene la capacidad económica para proveer alimentos, quedando pendiente de resolver solamente las necesidades del alimentista para así fijar su pensión alimentaria. Establecimos, además, que esto no exime al alimentante de descubrir cualquier prueba que proceda de acuerdo con las necesidades particulares de los menores y conforme a la particular condición socieconómica del padre. Ahora bien, cuando el alimentante acepta tener capacidad económica, luego no puede impugnar la pensión que haya sido fijada conforme a las necesidades razonables del alimentista alegando que él no tiene capacidad económica para pagarla.

Por otra parte, en *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492 (2000) (*Chévere v. Levis II*), secuela del caso *Chévere v. Levis I*, supra, nos tocó determinar cuáles criterios debe considerar un tribunal para imponer una pensión alimentaria, cuando el llamado a alimentar acepta su capacidad para pagar la cantidad que se le imponga y, por lo tanto, no tiene la obligación de descubrir sus fuentes de ingresos para que se pueda determinar su capacidad económica.

■ En cuanto a las reglas que gobiernan el derecho probatorio en este tipo de caso, establecimos lo siguiente:

> La Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia indirecta o circunstancial. La evidencia circunstancial es intrínsicamente igual a la evidencia directa. La norma de derecho con respecto a la evidencia circunstancial es que procede que se dé por probado un hecho a base de una inferencia, cuando hay una relación racional entre ésta y el hecho básico probado. (Citas omitidas.) *Chévere v. Levis II*, supra, págs. 499–500.

■ A la luz de lo anterior, resolvimos que un tribunal no está limitado a considerar únicamente evidencia sobre

gastos e ingresos, ya sea testifical o documental. Puede utilizar, además, evidencia circunstancial que le permita inferir, como parte de las necesidades del menor, el estilo de vida a que éste tiene derecho a tenor de la capacidad económica y el estilo de vida de su padre o madre.(²)

El estilo de vida es todo lo que concierne a obligaciones legítimas preexistentes o bienes adquiridos que no cualifican como gastos necesarios y que el nivel socioeconómico le permite a la persona incurrir en gastos o adquirir.(³) Tanto nuestra jurisprudencia como la de algunos estados de Estados Unidos han expresado que la pensión alimentaria debe estar fundamentada en las necesidades de los menores, consideradas éstas a la luz de todas las circunstancias del caso, incluyendo el estilo de vida de los padres.(⁴) En virtud de lo anterior, en *Chévere v. Levis II*, supra, pág. 504, establecimos que

> ... dicha jurisprudencia ha enfatizado claramente que las necesidades razonables de un menor cuyos padres son ricos pueden incluir cosas que pudieran ser consideradas como frívolas por padres de menos recursos económicos. Las necesidades y los lujos son términos relativos (*less well off*). (Énfasis suprimido.)

En el caso de autos, la señora Ferrer García sostiene que la documentación solicitada es un medio menos

---

(²) En ese caso, a modo ilustrativo, citamos *Estévez v. Superior Court*, 27 Cal. Rptr.2d 470, 475–476 (1994), donde la madre que tenía la custodia del menor requería del padre no custodio documentos relacionados con sus ingresos, gastos y activos. Solicitaba, entre otras cosas, sus estados de cuentas bancarias, informes de ingresos, talonarios de cheques, regalos, comisiones, acciones y dividendos. El tribunal concedió la orden protectora al padre no custodio, señalando: "where the extraordinarily high earner resists detailed discovery of his financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner ...." Resolvió, además: "calculation of amount of support called for by child support guidelines [is] unnecessary to resolve amount of child support to be paid by extraordinarily high earner who stipulated that he could and would pay any reasonable amount of child support." Íd.

(³) *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492, 502 esc. 11 (2000).

(⁴) Véanse: *Geberin v. Geberin*, 360 N.E.2d 41, 46 (1979); *Rohn v. Thuma*, 408 N.E. 2d, 578, 582 (1980); *Halum v. Halum*, 492 N.E.2d 30, 33 (1986).

oneroso que otros para descubrir al menos "algo" del estilo de vida del señor González y sus otros hijos.[5] No le asiste razón. Permitir que el señor González descubra la prueba solicitada por la señora Ferrer García sería permitir que éste someta información sobre sus ingresos, dejando sin efecto la doctrina establecida en *Chévere v. Levis I*, supra. *Habiendo el alimentante aceptado que tiene la capacidad económica para proveer una pensión alimentaria razonable al menor, no es necesario brindar información adicional para determinar dicha capacidad. El estilo de vida de un alimentante puede ser determinado o inferido de su capacidad económica, sin necesidad de aportar prueba sobre si el alimentante vive o no de manera compatible con ella. Un alimentante no puede privar a sus hijos de los alimentos que necesiten, independientemente de que, teniendo vastos recursos económicos, decida mantener un estilo de vida simple, moderado, quizás hasta austero, o que, por el contrario, careciendo de estos medios económicos mantenga un estilo de vida pomposo o extravagante. Cuando la capacidad económica del alimentante no está en controversia, como en el caso de autos, no procede descubrimiento de prueba alguno respecto a su estilo de vida.[6]* En el caso de autos, el señor González ha aceptado *reiteradamente* tener la capacidad económica. Por lo tanto, sólo restaría determinar las necesidades del menor y la capacidad económica de la madre para fijar la cuantía a la que se está obligado a pagar en concepto de alimentos.

Por los motivos antes expuestos, *revocamos el dictamen emitido por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos a tenor de lo aquí resuelto.*

El Juez Asociado Señor Rebollo López concurrió en parte y disintió en parte de la opinión emitida en este caso,

---

[5] Alegato de la parte recurrida, pág. 18.

[6] Véase *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 42–43 (1986).

proponiendo que se emita una opinión concurrente y disidente en etapa de reconsideración en la eventualidad de que la parte demandada peticionaria lo solicite oportunamente. El Juez Asociado Señor Hernández Denton concurrió con la opinión del Tribunal por entender que una vez el padre alimentista admite su capacidad económica para satisfacer una pensión alimentaria razonable, no procede descubrir prueba sobre su estilo de vida o cualquier otro factor dirigido a determinar su capacidad económica. El estilo de vida del alimentista es uno de los factores que debe considerarse, según la ley y la jurisprudencia, cuando precisamente la capacidad económica del obligado a proveer alimentos está en controversia y, por lo tanto, la autoridad adjudicadora tiene que precisar el ingreso neto correspondiente. Véanse: Art. 2 de la Ley Especial para el Sustento de Menores, Ley Núm. 86 de 17 de agosto de 1994 (8 L.P.R.A. sec. 501); *Argüello v. Argüello*, 155 D.P.R. 62 (2001); *López v. Rodríguez*, 121 D.P.R. 23 (1988).