EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yailin Pesquera Fuentes<br><br>    Recurrida<br><br>        v.<br><br>Miguel A. Colón Molina<br><br>    Peticionario | 2019 TSPR 55<br><br>202 DPR ____ |

Número del Caso:  AC-2016-58


Fecha: 28 de marzo de 2019


Tribunal de Apelaciones:

        Región Judicial de Bayamón-Aibonito Panel V


Abogados de la parte peticionaria:

        Lcdo. José A. Andreu García
        Lcda. Brenda Berríos Morales
        Lcda. Julia A. González del Valle


Abogada de la parte recurrida:

        Lcda. Yadira Torres Ruiz



Materia: Derecho de Familia: Aceptación de capacidad económica por un progenitor constituye un cambio en las circunstancias que puede dar paso a un proceso de revisión.  Determinación de la fecha desde la que se debe retrotraer la pensión alimentaria que se establezca.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yailin Pesquera Fuentes

    Recurrida

       v.                   AC-2016-0058

Miguel A. Colón Molina

    Peticionario

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 28 de marzo de 2019.

La disputa del caso que nos ocupa concede la oportunidad de pronunciarnos sobre la normativa de origen jurisprudencial de aceptación de capacidad económica en los pleitos de alimentos. En específico, cuando el Tribunal de Primera Instancia impone una pensión alimenticia y antes de transcurrir los tres años para que pueda ser revisada, el padre no custodio admite que cuenta con los medios económicos para sustentar a su hija y peticiona que el asunto se refiera a un proceso de revisión. La interrogante es la siguiente: ante esas circunstancias, ¿a qué fecha se debe retrotraer la manutención que se establezca producto de la aceptación? Por las razones que

expondremos a continuación, resolvemos que cuando hay un decreto de alimento *final* y la persona no custodia acepta capacidad económica previo a los tres años desde su imposición, la nueva pensión que resulte de ese proceso de revisión se ha de hacer efectiva a la fecha en que admitió tener capacidad económica.

Procederemos a delinear el cuadro fáctico material para solventar el asunto que nos ocupa.

I

A. Sucesos previo a la admisión de capacidad económica

El 12 de agosto de 2002 la Sra. Yailin Pesquera Fuentes (señora Pesquera Fuentes o recurrida) peticionó al Tribunal de Primera Instancia que impusiera al Sr. Miguel Colón Molina (señor Colón Molina o peticionario) una pensión alimentaria en beneficio de la hija que tienen en común. A causa de ello, el foro primario fijó una manutención *provisional* de $400 mensuales, monto que incrementó ulteriormente a $700. El 16 de marzo de 2005 las partes estipularon una pensión mensual de $1,200. No obstante, el 25 de septiembre de 2006 la señora Pesquera Fuentes planteó que advino en conocimiento de que el señor Colón Molina omitió información sobre sus ingresos, por lo que alegó que el cómputo de los alimentos se basó en información incompleta. En virtud de esto, requirió que se le autorizara efectuar un descubrimiento de prueba para corroborar la información recibida y así poder solicitar lo que procediera en derecho.

Tras numerosos acontecimientos procesales, el 5 de marzo de 2010 la Examinadora de Pensiones Alimenticias (EPA) rindió su *Informe*. Explicó que la vista de alimentos fue suspendida en once ocasiones porque el peticionario no acató las órdenes del tribunal relacionadas al descubrimiento de prueba. Indicó que la vista se celebró finalmente en noviembre de 2009, sin la comparecencia del señor Colón Molina. Apuntó que, para producir el cómputo de la manutención, utilizó un estado financiero que el peticionario suministró al solicitar un préstamo hipotecario. Además, estimó que, luego de ciertas deducciones, el señor Colón Molina generaba un salario mensual de $25,344.86. En vista de ello, recomendó: (1) la imposición de una pensión mensual de $6,114; (2) **que se hiciera efectiva a partir de octubre de 2006**; y (3) fijar un retroactivo por la cantidad de $206,388. Consecuentemente, el 16 de marzo de 2010 el foro primario emitió una resolución mediante la cual acogió todas las sugerencias de la EPA.

Insatisfecho con ese curso decisorio, y tras haber solicitado reconsideración sin éxito, el peticionario acudió ante el Tribunal de Apelaciones. Aseveró, entre otras cosas, que en el cálculo de la manutención no se tomó en cuenta la totalidad de sus dependientes. Al atender el asunto, el foro revisor confirmó parte del dictamen recurrido. Empero, razonó que, a tenor con lo que exigía el ordenamiento legal, la cuantía de pensión alimentaria debía

ser en virtud del total de hijos que tenía el señor Colón Molina. Por lo tanto, devolvió el caso al tribunal de instancia para que determinara el monto nuevamente.

Con el fin de acatar el mandato del Tribunal de Apelaciones, la EPA presentó un *Acta*. Tras sopesar que el peticionario era padre de cuatro menores de edad, propuso que se le fijara una pensión mensual de $3,379. Asimismo, expresó que **la suma del retroactivo ——de octubre de 2006 a marzo de 2011—— ascendía a $115,487.** El 29 de marzo de 2011 el Tribunal de Primera Instancia notificó una resolución a través de la cual adoptó las recomendaciones de la EPA y designó una **segunda pensión alimentaria.** Además, instruyó que **esa suma iba a imperar hasta que se hiciera una nueva determinación y que no se modificaría salvo que acontecieran cambios significativos o imprevistos en las circunstancias de alguna de las partes.**[1] De lo contrario, apuntó que **la variación de este monto se podía peticionar luego de que transcurrieran tres años.**[2]

A pesar de haber acogido lo propuesto por la EPA, dos días más tarde el foro primario celebró una vista de seguimiento. Allí, el representante legal del señor Colón Molina adujo que la cantidad de alimentos debía ser menor. Después de indagar sobre ese argumento, el juzgador refirió el caso a la EPA, pues razonó que se había variado erróneamente la partida de pensión suplementaria. También,

---

[1] *Resolución*, Apéndice de la Apelación, págs. 86-87.

[2] Íd.

requirió al peticionario que presentara su Planilla de Información Personal y Económica (PIPE) para examinar la razonabilidad del retroactivo.[3] Según ordenado, la EPA presentó otra *Acta* donde clarificó que la discrepancia en el cálculo surgió dado a que, inicialmente y por inadvertencia, no incluyó la partida del colegio de la menor. Por esa razón, reafirmó que la **segunda pensión alimentaria** debía ser por la suma de $3,379 mensuales y que la deuda por concepto de retroactivo ascendía a $115,487. El 6 de junio de 2011 el Tribunal de Primera Instancia notificó una *Orden* en la que sostuvo la efectividad de la **segunda pensión alimentaria**. Disconforme, el 5 de julio de 2011 el peticionario recurrió ante el foro intermedio. Sin embargo, el 29 de agosto de 2011 ese tribunal **confirmó** la **segunda pensión alimentaria**.

En el ínterin, el 21 de junio de 2011 se efectuó una vista donde se ventiló, entre otras cosas, el retroactivo adeudado por el señor Colón Molina. En ésta, las partes anunciaron que pactaron que el peticionario iba a satisfacer un 35 % de lo adeudado por concepto del retroactivo, lo que sumaba a $40,420.45. Asimismo, el juzgador estableció un plan de pago por la cuantía de $2,085.17, que cobraría vigor desde el 1 de agosto de 2011. En vista de ello, a partir de julio de 2011, el peticionario tenía que abonar una mensualidad de $5,464.17. Además, como se dilucidó evidencia de los ingresos y

---

[3] *Minuta*, Apéndice de la Apelación, págs. 109-110.

propiedades del señor Colón Molina, el juez advirtió que, si de la información se desprendía que la pensión fijada no se ajustaba a las guías por este tener ingresos mayores, ordenaría la revisión de la pensión alimenticia.[4] También, el juzgador accedió a que se realizara el descubrimiento de prueba para determinar si hubo cambios sustanciales y, de haberlos, referir el caso a la EPA. Expresó que si el peticionario deseaba asumir capacidad tendría que esperar tres años. Finalmente, manifestó que no estaba autorizando una revisión alimenticia, sino que iba a permitir el descubrimiento de prueba que nunca se produjo.[5]

B. Acontecimientos posteriores a la aceptación de capacidad económica

El **15 de noviembre de 2011** el señor Colón Molina presentó ante el Tribunal de Primera Instancia un escrito donde admitió contar con capacidad económica para sufragar los alimentos de su prole y **pidió que el caso se sometiera a la EPA.** Por consiguiente, el 12 de diciembre de 2011 el foro primario ordenó a la señora Pesquera Fuentes que mostrara causa por la cual el caso no debía ser referido ante la EPA en un término de quince días. El 22 de agosto

---

[4] *Resolución*, Apéndice de la Apelación, pág. 125. Específicamente, dispuso que "el Tribunal que **podrá ordenar la revisión de la pensión alimentaria** si de la información que se ofrezca demuestra que la pensión fijada no fue conforme a las guías por razón de que papá tenga ó se le pueda imputar unos ingresos mayores". (Énfasis suplido).

[5] De la *Minuta*, Apéndice de la Apelación, pág. 127, se desprende que el juzgador manifestó que "[p]ermitió descubrimiento de prueba y si realmente hubo cambios sustanciales, referirá la Examinador de pensiones Si la parte desea asumir capacidad, deberá esperar los tres años. Hizo constar que no está autorizando una revisión de pensión alimentaria, sino autorizando un descubrimiento de prueba que no se hizo".

de 2013 el tribunal de instancia dictó una *Orden* en la que:
(1) **ordenó que se pautara la vista de revisión sobre pensión alimenticia ante la EPA**; y (2) denegó el pedido de descubrimiento de prueba de la recurrida puesto que el peticionario reconoció tener capacidad económica.[6]

Luego de múltiples sucesos, la EPA rindió un *Informe* donde recomendó imponer al peticionario la obligación de satisfacer una manutención mensual de $9,188.57, **retroactiva al 22 de septiembre de 2006**.[7] En consideración de ello, el 3 de marzo de 2015 el Tribunal de Primera Instancia notificó una resolución por la que avaló la sugerencia formulada por la EPA y estableció la **tercera pensión alimentaria**.

---

[6] El 29 de enero de 2013 se llevó a cabo otra vista y de la *Minuta* emana que la representante legal de la señora Pesquera expresó lo siguiente: "que van a entrar en conversaciones en cuanto al referido a la Examinadora de pensión alimentaria y entiende que va a llegar a un acuerdo. **Hay una pensión alimentaria impuesta y un retroactivo determinado que se está cumpliendo**". (Énfasis y subrayado suplido). Legajo II.

[7] El 30 de junio de 2014 la EPA rindió un *Acta*. Manifestó que se señaló una vista de alimentos para el 2 de octubre de y que ese día se acordó que la vista final se efectuaría el 4 de diciembre de 2013. Dispuso que el señor Colón Molina no asistió a esta última por lo que se celebró en su ausencia. Explicó que la PIPE de la recurrida que obraba en el expediente del tribunal era de agosto de 2007. Debido a que la señora Pesquera Fuentes no actualizaba su PIPE desde el 2007 sino que solo proveyó un listado de los gastos de la menor sin evidencia que los sustentara, concluyó que no tenía los elementos de juicio para imponer la pensión, por lo que recomendó que el caso se atendiera en otra fecha. El 5 de septiembre de 2014 la EPA notificó una segunda acta donde expresó que la vista se suspendió pues la recurrida no contaba con representación legal. En miras de ello, reseñaló la vista para el 3 de octubre de 2014 donde se iban a discutir los gastos de la menor que estuvieran en controversia.

Respecto a la PIPE, el 14 de julio de 2014 la señora Pesquera Fuentes instó una *Moción de reconsideración al palio de la Regla 47 de Procedimiento Civil por ser las órdenes emitidas en violación al debido proceso de ley que tiene la parte demandante en el proceso*. A través de este escrito **aclaró que había presentado su PIPE el 2 de octubre de 2013.**

Descontento, el señor Colón Molina peticionó reconsideración infructuosamente, por lo que el 19 de mayo de 2015 acudió en revisión ante el Tribunal de Apelaciones.[8] Aseveró que **el 29 de marzo de 2011 el foro de instancia fijó la segunda pensión alimentaria y que la misma se retrotrajo al 1 de octubre de 2006**. Arguyó que el tribunal consignó que ese monto se iba a mantener hasta que se llevara a cabo una nueva determinación y que no se modificaría a menos que acontecieran cambios significativos o imprevistos en las circunstancias de alguna de las partes. Indicó que esa **segunda pensión alimentaria** que se estableció en el 2011 era final y que en el 2013 comenzó un nuevo proceso de revisión. Alegó que el descubrimiento de prueba se autorizó solo para propósitos del retroactivo y que si de ello se desprendían otros ingresos, entonces, el asunto se enviaría a la EPA. Argumentó que fue su petitorio, al admitir capacidad económica, el que originó el nuevo proceso de revisión. Finalmente, solicitó que el decreto se hiciera retroactivo al 22 de agosto de 2013, fecha en que el tribunal de instancia remitió el asunto ante la EPA.

Sometida la polémica, el 29 de enero de 2016 el Tribunal de Apelaciones resolvió que el Tribunal de Primera Instancia incidió al acoger la recomendación de la EPA y

---

[8] El 13 de mayo de 2015, notificada el 20 de mayo, el Tribunal de Primera Instancia emitió una resolución donde denegó la solicitud de reconsideración. Véase, *Resolución*, Apéndice de la Apelación, págs. 56-57.

retrotraer la pensión al 22 de septiembre de 2006.[9] Esto, pues, el 29 de marzo de 2011 ya había decretado que la pensión se debía retrotraer al 1 de octubre de 2006. Por ende, varió el dictamen para que la retroactividad de la manutención fuera a partir de esa fecha.

Aún insatisfecho, tras una petición de reconsideración fallida, el 6 de mayo de 2016 el peticionario recurrió ante esta Curia. Expedimos el recurso de *certiorari* para atender solo un señalamiento de error: si el foro apelativo intermedio incidió al retrotraer la eficacia de la **tercera pensión alimentaria** a octubre de 2006, a pesar de que el 29 de agosto de 2011 el foro intermedio emitió una sentencia mediante la cual confirmó la imposición de la **segunda pensión alimentaria**, que se retrotrajo al 2006. Ambas partes comparecieron. Con el beneficio de sus argumentos, pasemos a trazar el marco legal que aplica a los hechos relatados.

**II**

A. <u>Obligación de satisfacer alimentos</u>

La *responsabilidad* que acarrea todo progenitor o toda progenitora de alimentar a sus hijos o hijas se plasmó en los artículos 143 y 153 de nuestro Código Civil.[10] El Art. 143 preceptúa que los y las ascendientes y descendientes tienen un deber recíproco de alimentarse.[11] Mientras que el Art. 153 dispone que todo padre y madre están obligados a

---

[9] La sentencia se notificó el 6 de abril de 2016.

[10] *Chévere v. Levis*, 150 DPR 525, 535 (2000).

[11] Art. 143 del Código Civil de Puerto Rico, 31 LPRA sec. 562.

alimentar a sus hijos o hijas no emancipados con arreglo a sus fortunas.[12] Si bien nuestro Código Civil impuso a todos los progenitores la obligación de alimentar a sus hijos o hijas, para la legislatura ello no fue suficiente puesto que el Estado continuaba confrontándose con personas que inobservaban este deber.[13] Por esta razón, la Asamblea Legislativa promulgó la *Ley Orgánica de la Administración para el Sustento de Menores* (Ley para el Sustento de Menores), Ley Núm. 5 de 30 de diciembre de 1986, según emendada, 8 LPRA sec. 502. En esta reafirmó la política pública del Gobierno de procurar que los padres y las madres legalmente responsables contribuyeran, en la medida que sus recursos les posibilitaran, en el sustento de sus hijos o hijas.

Ahora bien, es preciso distinguir la obligación de alimentar a los y las menores del deber de *pagar* los alimentos. La génesis de la responsabilidad de todo o toda ascendiente de *satisfacer* los alimentos depende de cómo se reclama este deber. En ausencia de acuerdo o disposición previa sobre la cuantía, la obligación de *pagar* surge desde que se insta la acción requiriéndolos. Esto lo erige el Art. 147 del Código Civil de Puerto Rico, 31 LPRA sec. 566, al establecer que "[l]a obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos, **pero no se abonaran sino**

---

[12] Art. 153 del Código Civil de Puerto Rico, 31 LPRA sec. 601.
[13] *Ferrer v. González*, 162 DPR 172, 177 (2004).

**desde la fecha en que se interponga la demanda".** (Énfasis suplido). Lo que implica que "los alimentos no serán abonados sino desde la fecha en que se presentó la correspondiente demanda exigiendo su pago y no desde el momento que surge la necesidad".[14] Cimentado en ello es que se estima que el decreto de pensión que un tribunal emite, no declara la existencia de una obligación anterior al proceso, sino que establece el nacimiento de la *deuda* con el proceso.[15]

Sobre este aspecto resulta beneficioso observar lo que el autor Eduardo A. Zannoni explica sobre el decreto de alimento en el Derecho Argentino:

> la sentencia de alimentos se descompone virtualmente en tres partes: una de carácter declarativo, en la cual el juez reconoce el *título* al actor (parentesco, contrato, testamento) y lo declara apto para obligar al deudor; otra parte *constitutiva* (esto es, determinativa) del *quantum* de la pensión alimenticia adeudada; y **una última parte de *condena* en la cual concretamente impone al deudor la prestación y asegura la vía ejecutoria al acreedor.** "La tesis de que los alimentos sólo se deben desde la sentencia -agrega Couture- descansa en el error de dar carácter principal a la parte constitutiva de la sentencia; **la tesis de que retrotrae sus efectos al día de la demanda, pone en primer término el carácter de condena que tiene la decisión.**
> Por ello entendemos acertada la jurisprudencia mayoritaria de nuestros tribunales, que, aun antes de la sanción del Código Procesal vigente, había establecido el carácter retroactivo de la sentencia de alimentos a la fecha de la interposición de la demanda, ya que aquélla es

---

[14] R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, 2002, Vol. II, pág. 1468.

[15] J. L. Lacruz Berdejo y otros, *Elementos de Derecho Civil: Familia*, J. Rams Albesa, 2da ed., Madrid, Ed. Dykinson, 2005, T. IV, pág. 24.

*declarativa del derecho de percibirlos* por parte del alimentado, quien formula su petición sobre la base de una necesidad actual que debe ser atendida. (Bastardillas en el original y énfasis suplido).[16]

Cónsono con la exposición que precede, la *Ley para el Sustento de Menores*, supra, erige que los decretos de alimentos se retrotraen a la fecha en que se presenta la reclamación.[17]

De otro modo, debemos puntualizar que estas determinaciones son de carácter variable y que no constituyen cosa juzgada.[18] Por tanto, pueden modificarse a tenor con la sec. 518 de la Ley que dispone lo siguiente:

> Toda orden de pensión alimentaria podrá ser revisada y modificada cada tres (3) años desde la fecha en que la orden fue establecida o modificada, en caso de que se presente una solicitud de revisión y modificación por el alimentante, alimentista, la Administración o cualquier agencia Título IV-D cuando exista una cesión de derecho a tenor con la sec. 508 de este título. Toda orden de pensión alimentaria de menores emitida por el Tribunal o la Administración deberá apercibir a las partes de su derecho a solicitar una revisión y modificación de su orden y para aquellos casos bajo la jurisdicción de la Administración, dicha notificación se continuará expidiendo al menos una vez cada tres años. No obstante, cualquier ley o disposición en contrario, **el requisito de cambio significativo o imprevisto en las circunstancias de algunas de las partes se cumple si la aplicación de las Guías para Fijar y Modificar Pensiones Alimentarias en Puerto Rico adoptadas según se dispone en este capítulo,**

---

[16] E. A. Zannoni, *Derecho Civil Derecho de Familia*, 3era ed., Ed. Astrea de Alfredo y Ricardo Depalma, 1998, T. I, pág. 147. Inclusive, en Argentina "la sentencia que se dicte en el incidente que disponga el *aumento* de la cuota alimentaria tendrá efecto retroactivo a la fecha de la notificación del pedido". Íd., pág. 156.

[17] 8 LPRA sec. 518. Véase, además, S. Torres Peralta, *El Derecho Alimentario en Puerto Rico*, San Juan, 2006, T. I, 7.04.

[18] *Figueroa Hernández v. Rosario Cervoni*, 147 DPR 121, 128 (1998). Véase, además, Serrano Geyls, *op. cit.*, pág. 1471.

> **resulta en una cantidad diferente a la pensión corriente actualmente ordenada.**
>
>                        . . . . . . . . .
>
> El Administrador o el tribunal, a solicitud de parte o a su discreción podrá iniciar el procedimiento para modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o **cuando exista cualquier evidencia de cambio sustancial en circunstancias.** (Énfasis suplido).

En resumen, los dictámenes de alimentos no advienen estrictamente finales ni definitivos porque **están sujetos a ser revisados al paso de tres años o en caso de que acontezca un cambio en las circunstancias que lo justifique.**[19] De ordinario, la revisión de una orden de pensión se puede solicitar cuando transcurran tres años desde la fecha en que se decretó. No obstante, el tribunal, a petición de parte o *motu proprio*, puede reexaminar un decreto alimentario aun cuando no hayan pasado los tres años si estima que hay justa causa para ello. Es decir, si "hay un cambio sustancial en las circunstancias iniciales en que se determinó la pensión".[20] La justa causa puede consistir en: (1) variaciones o cambios significativos o

---

[19] *Figueroa Hernández v. Rosario Cervoni*, supra, pág. 128. Además, hemos admitido que "[l]as modificaciones a las determinaciones sobre custodia y alimentos basadas en hechos y circunstancias ocurridos con posterioridad a haberse emitido el dictamen que se intenta modificar, pueden reclamarse en el mismo caso o en uno independiente. Sin embargo, a pesar de que se tiene esta alternativa, en la mayoría de los casos no es recomendable que estas modificaciones se soliciten en un pleito independiente. La economía procesal así lo sugiere". Id., págs. 128-129.

[20] Serrano Geyls, *op. cit.*, pág. 1499.

imprevistos en los ingresos, la capacidad de generar ingresos, los egresos, los gastos, el capital del alimentante o alimentista, en los gastos, las necesidades o las circunstancias del menor; o (2) **cuando exista cualquier prueba de cambio sustancial en las circunstancias.**

En ese sentido, hemos reconocido que el cambio sustancial en las circunstancias es "aquel que afecta la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas".[21] Además, en el contexto de las guías, pudimos observar que la legislación reconoce que hay un cambio significativo o imprevisto en las circunstancias si la cantidad de manutención resulta en una cantidad diferente a la pensión corriente.

Algunas de las razones que fundamentan esta normativa las explica la Lcda. Sarah Torres Peralta al expresar que

> [l]a vigencia del decreto alimentario queda sujeta a las circunstancias cambiantes, y a los cambios sustanciales o imprevistos, tanto respecto a la capacidad de los alimentantes como en cuanto a las necesidades de los alimentistas. El mero paso del tiempo; el crecimiento de los hijos, los costos escolares en aumento; iguales aumentos en todos los renglones de la crianza – comida, ropa, habitación, vestimenta, asistencia médica, rentas o plazos hipotecarios del techo del alimentista, aumento en general del costo de vida entre otros. Además, se asume que el alimentante, por su parte, va progresando en su empleo o en su empresa o negocio o en el trabajo en que se desempeña. También puede ocurrir a la inversa, que los recursos del alimentante vengan a menos; o que las necesidades de los alimentistas disminuyan con el paso del tiempo – graduaciones, matrimonios, vida independiente de los hijos, herencias; fracaso en los negocios, pérdida o cambio de empleo o cualquier otro

---

[21] *McConnell v. Palau*, 161 DPR 734, 747 (2004).

evento que tenga el efecto de permitir aumentos o disminuciones en la pensión previamente fijada.[22]

Ahora bien, en cuanto a la retroactividad del decreto de aumento, la *Ley para el Sustento de Menores* dispone que la efectividad de los aumentos de las pensiones es desde la fecha en que se solicite el incremento en la manutención.[23]

Discutido el marco de la retroactividad, pasamos a repasar el principio de proporcionalidad que rige en el derecho de alimentos.

B. La proporcionalidad de la pensión alimentaria

El principio de proporcionalidad permea toda nuestra legislación alimentaria y tiene como finalidad el fomentar el trato justo entre los acreedores y los deudores alimentarios.[24] Este se manifiesta en dos instancias: *primero*, al fijarse la cuantía de alimentos, y *segundo*, cuando se prorratea el pago de la pensión alimentaria entre los progenitores.[25]

En lo atinente al proceso que se lleva a cabo para establecer el monto a ser satisfecho, el Art. 146 del Código Civil de Puerto Rico, 31 LPRA sec. 565, postula que "[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los

---

[22] Torres Peralta, *op. cit.*, págs. 7.01-7.02.

[23] 8 LPRA sec. 518. Véase, además, *Quiles Pérez v. Cardona Rosa*, 171 DPR 443, 455 (2007), donde reconocimos que "si luego de modificada la pensión […] resulta procedente un aumento, éste debe ser *retroactivo* a la fecha en que se solicitó". (Bastardillas en el original).

[24] *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550*,* 567 (2012); Serrano Geyls, *op. cit.,* pág. 1465.

[25] *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 171 (2016).

recursos del primero y a las necesidades del segundo". Es decir, "la pensión alimentaria debe estar basada en las necesidades de los menores, consideradas éstas a la luz de todas las circunstancias del caso, incluyendo el estilo de vida de los padres".[26] Este esquema conlleva hacer un balance entre los intereses del o de la menor y la capacidad económica de los y las responsables de costear sus necesidades.[27]

De otro modo, y en lo referente al prorrateo del pago de los alimentos entre sus progenitores, el Art. 145 del Código Civil de Puerto Rico, 31 LPRA sec. 564, erige que "[c]uando recaiga sobre dos (2) o más personas la obligación de dar alimentos, se repartirá entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo". Esto, pues, el principio de proporcionalidad "considera el patrimonio de ambos padres alimentistas".[28] No obstante, "[l]a proporción de las contribuciones individuales se establecerá en relación al mismo caudal individual que ha servido para calcular el importe global de los alimentos (art. 146), y por tanto en proporción a la cantidad que hubiera debido aportar cada alimentista si fuera único".[29]

En virtud del principio de proporcionalidad "se han adoptado, por vía estatutaria y reglamentaria, guías más

---

[26] *Ferrer v. González*, supra, pág. 180.

[27] *De León Ramos v. Navarro Acevedo*, supra, pág. 171.

[28] *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 928 (2017).

[29] Lacruz Berdejo y otros, *op. cit.*, pág. 23.

precisas para dirigir la difícil labor de determinar la capacidad económica con la que cuentan los padres y las madres para suplir las necesidades de sus hijos".[30] Para ello, la *Ley para el Sustento de Menores* hizo "compulsorio el descubrimiento sobre la situación económica del alimentante en casos relacionados con las pensiones alimentarias, para poder fijar la cuantía que se ha pagar".[31]

Ahora bien, en *Chévere v. Levis*, 150 DPR 525 (2000), decidimos que la *Ley para el Sustento de Menores* va dirigida hacia aquellos progenitores y progenitoras que están obligados a alimentar, pero se niegan a cumplir su cometido.[32] Manifestamos que el estatuto tiene como fin el descubrir la suficiencia económica del llamado a alimentar para así establecer la pensión alimentaria.[33] Además, pautamos que la *Ley para el Sustento de Menores* se activa en los casos en que el obligado o la obligada a alimentar se niega a hacerlo o si hay duda sobre su capacidad económica.[34] No obstante, resolvimos que cuando un padre o una madre

> fomenta la política del Estado de "*paternidad voluntaria*" y admite capacidad económica, no es necesario que divulgue sus ingresos. Más aún, cuando un padre alimentante acepta que posee

---

[30] *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016-1017 (2010).

[31] 8 LPRA sec. 525. Véase, además, *Ferrer v. González*, *supra*, pág. 178.

[32] *Chévere v. Levis*, supra, pág. 543.

[33] Íd., pág. 544.

[34] Íd.

suficientes ingresos para pagar la pensión
alimentaria que en derecho proceda a favor de sus
hijos, *promueve, con acierto, el interés público*
*del bienestar de los menores y agiliza los*
*procedimientos en cuanto a la otorgación de*
*pensiones alimentarias*. Por consiguiente, cuando
el padre alimentante acepta su capacidad
económica, se hace innecesario el descubrimiento
de prueba, según dispuesto por ley. (Bastardillas
en el original).[35]

Es decir, si un progenitor o una progenitora
alimentante admite que posee medios suficientes para cubrir
su obligación de proveer alimentos a sus hijos o hijas
menores, se prescinde, por no ser necesario, el trámite
provisto en la ley y las Guías.[36] En cuyo caso, no se deberá
emplear el mecanismo de descubrimiento de prueba para
precisar la situación económica del o de la alimentante.[37]

Una vez el o la alimentante acepta que posee medios
suficientes para cumplir sus obligaciones alimentarias, lo
único que resta por hacer es determinar la suma justa y
razonable de pensión alimentaria en atención a las
necesidades del o de la alimentista.[38] Tras ello suceder, el
o la alimentante no podrá impugnar la pensión fijada

---

[35] Íd.

[36] *De León Ramos v. Navarro Acevedo*, supra, pág. 174.

[37] Íd. Además, en *Chévere Mouriño v. Levis Goldstein*, 152 DPR 492, 501 (2000), reconocimos que al fijar la cuantía de alimentos, los foros judiciales no estaban limitados a considerar prueba directa de los ingresos, sino que podían utilizar "evidencia circunstancial que le[s] permita inferir, como parte de las necesidades del menor, el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante". Más adelante, en *Ferrer v. González*, *supra*, pág. 181, pautamos que "*[h]abiendo el* *alimentante aceptado capacidad económica para proveer una pensión* *alimentaria razonable al menor, no es necesario brindar información* *adicional para determinar dicha capacidad. … Cuando la capacidad* *económica no está en controversia, como el caso de autos, no procede* *descubrimiento de prueba alguno respecto a su estilo de vida*". (Bastardillas en el original).

[38] Íd., pág. 176; *Chévere v. Levis*, supra, pág. 545.

conforme a las necesidades del o de la alimentista al argüir que no cuenta con los recursos necesarios para satisfacerla.[39] Mas esta prohibición "no se refiere a que no se pueda impugnar la cuantía de la pensión porque resulte contraria a la prueba porque sea irrazonable a la luz de las necesidades de los menores".[40]

Ulteriormente, en *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 571 (2012), resolvimos que si

> el alimentante acepta su capacidad económica, procede entonces que el alimentante pague el 100% de los gastos razonables de los menores. Si este quiere que se le imponga pagar solo una proporción de los gastos bajo el fundamento de que la persona custodia también debe realizar una aportación, por imperativos de justicia y principios matemáticos básicos, deberá divulgar sus ingresos a fin de utilizar las Guías y poder adjudicar la participación correspondiente a la madre y al padre.

Plasmado el marco jurídico material a la presente controversia, nos encontramos en posición de resolver.

### III

En lo pertinente, el señor Colón Molina apunta que la tercera pensión alimentaria no podía hacerse efectiva al 2006, pues en el 2011 el foro primario fijó la segunda pensión alimentaria que retrotrajo al 2006 y que ese proceder fue confirmado por el Tribunal de Apelaciones. Aduce que el tribunal de instancia consignó en su decreto que la manutención establecida regiría hasta que realizara una nueva determinación. Asevera que asumió capacidad

---

[39] *Chévere v. Levis*, supra, pág. 546.

[40] *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 565.

económica con posterioridad y que fue en agosto de 2013 que el foro primario accedió a revisar la segunda pensión alimentaria. Por tanto, solicita que modifiquemos el dictamen recurrido y decretemos la efectividad de la manutención al 22 de agosto de 2013, fecha en que el Tribunal de Primera Instancia ordenó a la EPA que revisara la pensión.

Por su parte, la señora Pesquera Fuentes arguye que en la vista del 21 de junio de 2011 —fecha en que la segunda pensión alimentaria no era final y firme— quedó claro que no se autorizó un nuevo proceso de revisión, sino que continuó el iniciado en el 2006. Sostiene que conforme a lo que allí aconteció, el foro de instancia permitió el descubrimiento de prueba para ver si hubo un cambio sustancial en las circunstancias económicas. Como el peticionario no descubrió evidencia, pues aceptó tener capacidad económica, manifiesta que "el hecho al cual estaba condicionado el que continuara la revisión de pensión iniciada en el año 2006 quedó meridianamente probado". Asevera que el proceder del señor Colón Molina, a menos de cinco meses de haberse autorizado el descubrimiento de prueba para indagar si hubo cambios sustanciales en su capacidad económica y a menos de tres meses de que el foro apelativo intermedio confirmara al primario, establece inequívocamente su solicitud de que la pensión se computara en vista del escrutinio de aceptación de capacidad. Esto, pues se le había advertido que para

aceptar capacidad tenía que esperar tres años. Argumenta que el peticionario asumió capacidad a pesar de que el tribunal apercibió que el caso no se atendería como una nueva revisión y que para aceptar capacidad tenía que esperar tres años. Razona que el pago de pensión alimentaria debe ser efectivo desde que se somete la petición de alimentos o cuando se solicita su incremento. Aduce que el 29 de marzo de 2011 el tribunal intermedio confirmó la segunda pensión alimentaria y la hizo efectiva al 1 de octubre de 2006.

Como podemos apreciar, la polémica en el caso de marras se circunscribe a delimitar a cuál fecha se debe hacer efectiva la tercera pensión alimentaria establecida bajo el esquema de aceptación de capacidad para así fijar el retroactivo, luego de que el señor Colón Molina peticionara la revisión. Esto, en consideración de que, tras la peticionaria solicitar la revisión en el 2006 se impuso la segunda pensión alimentaria la cual advino "final" y de que no había transcurrido el tiempo dispuesto por ley para poder pedir su reevaluación. Veamos.

El deber de abonar los alimentos se origina cuando el interesado o la interesada los reclama judicialmente.[41] La sentencia que se emite en el pleito declara el derecho de la persona a exigir el pago, ya que el derecho a recibir los alimentos no es de origen judicial. Ello lo dispone el Código Civil, la *Ley para el Sustento de Menores* y así lo

---

[41] Art. 147 del Código Civil de Puerto Rico, 31 LPRA sec. 566.

hemos reconocido con anterioridad.[42] El dictamen que se promulgue en su día es carácter condenatorio, es por esto que la obligación de satisfacerlos se retrotrae al día en que se exigió por la vía judicial. Por ende, incoar la demanda de manutención es el acto que da inicio a la deuda.

Sin duda, los dictámenes de pensiones son peculiares. Como pudimos notar, el derecho de alimentos es de carácter variable, y por ende, revisable. La regla general es que nuestro ordenamiento jurídico permite la revisión de estos decretos al paso de tres años desde la fecha en que se dictan.[43] Sin embargo, a modo de excepción, pueden reevaluarse aun cuando no haya transcurrido ese periodo si existe justa causa para ello. Esa justificación, entre otras cosas, puede consistir en variaciones o cambios significativos o imprevistos en las circunstancias que cimentaron la manutención fijada.[44] Aunque en el ejercicio de cómputo bajo las guías, la Ley para el Sustento de Menores admite que para ello basta que "de la aplicación de las Guías para Fijar y Modificar Pensiones Alimentarias […] **resulta en una cantidad diferente a la pensión corriente actualmente ordenada**". (Énfasis suplido).[45] Por disposición de ley, el aumento en la pensión alimentaria se ha de retrotraer a la fecha en que se peticionó.[46]

---

[42] 8 LPRA sec. 518; *Quiles Pérez v. Cardona Rosa*, supra.

[43] 8 LPRA sec. 518.

[44] Íd.

[45] Íd.

[46] Íd.

Con esto en mente cabe increparnos: ¿la aceptación económica de un progenitor o una progenitora constituye un cambio en las circunstancias que da paso a un procedimiento de revisión? A fin de contestar esta interrogante debemos dirigirnos a la figura de origen judicial de la admisión de capacidad económica y a sus implicaciones.

Según discutimos, si un padre o una madre admite que cuenta con los medios económicos para mantener a su hijo o hija se suspende el principio de proporcionalidad en su vertiente del prorrateo del pago entre los padres. Es por esto que no es necesario llevar a cabo el descubrimiento de prueba compulsorio instaurado estatutariamente. En consecuencia, el o la alimentante va a ser el responsable de pagar el cien por ciento de los gastos razonables del menor. Ello, a su vez, naturalmente, podría redundar en un *aumento* en la suma de la pensión que ha de satisfacer. Por ende, resultaría en una cuantía diferente a la pensión corriente. Además, debemos tomar en cuenta las consecuencias que tiene sobre la persona custodia ya que no va a tener que aportar a los gastos razonables de su hijo.

Indudablemente, dado las repercusiones que acarrea para el menor, el padre o la madre custodio y el o la alimentante, la admisión de capacidad económica es un cambio significativo en las circunstancias de las partes. Por consiguiente, cuando el progenitor o la progenitora no custodio acepta que tiene capacidad para satisfacer los alimentos de sus hijos o hijas y solicita la revisión de un

decreto final, por el efecto que conlleva, el tribunal deberá, **<u>con la premura que los casos de alimentos ameritan</u>**, remitir el caso a la EPA para que esta formule una recomendación de la manutención a imponer. Una vez la EPA pase juicio sobre los gastos razonables del menor y del monto mayor que el padre o la madre no custodio ha de pagar, si el juzgador lo adopta entonces **deberá imponerlo desde la fecha en que aceptó capacidad pues esa es la circunstancia que dio paso al proceso de revisión del aumento de la manutención.** Solo así alcanzamos un balance adecuado y promovemos la paternidad y maternidad responsable sin mayores dilataciones para evitar privar a un niño o una niña cuyo progenitor o progenitora no custodio aceptó cubrir el cien por ciento de sus gastos razonables.

De acuerdo a lo que relatamos, en el 2005 las partes estipularon una pensión final, pero en el 2006 la señora Pesquera Fuentes planteó que la estipulación se apoyó en información incompleta debido a que el señor Colón Molina ocultó información de sus ingresos. A causa de ello, la EPA inició un procedimiento de revisión y el 6 de junio de 2011 el Tribunal de Primera Instancia impuso al peticionario la segunda pensión alimentaria, **que hizo retroactiva al 2006.**[47]

---

[47] Cabe resaltar que en el ínterin, en la vista celebrada el 21 de junio de 2011 las partes informaron al juzgador que habían acordado que el señor Colón Molina iba a satisfacer un 35 % de lo que adeudaba por el retroactivo. Ese mismo día, el juez impuso un plan de pago, hoy satisfecho.

El 29 de agosto de 2011 el Tribunal de Apelaciones confirmó este dictamen, por lo que advino final y firme.

Finalizado el trámite de la revisión peticionada en el 2006 y ya establecida la segunda pensión alimentaria, el **15 de noviembre de 2011** el peticionario presentó un escrito donde aceptó que poseía los medios para sustentar a su hija y pidió que el caso se remitiera a la EPA. Esto constituyó un cambio sustancial en las circunstancias de las partes, por lo que el 22 de agosto de 2013 el Tribunal de Primera Instancia decidió remitir el asunto a la EPA. De hecho, el foro de instancia descartó el descubrimiento de prueba y ordenó la revisión. Como parte de ese nuevo proceso de revisión, el foro primario impuso la tercera pensión alimentaria, **de cantidad mayor**, a la luz de la doctrina de aceptación de capacidad. Sin embargo, la retrotrajo a septiembre de 2006. El Tribunal de Apelaciones determinó que procedía a partir de octubre de 2006. Erraron al así actuar.

Nótese, que al momento que el señor Colón Molina aceptó contar con medios para alimentar a su prole la segunda pensión alimentaria que se impuso producto del proceso que comenzó en el 2006 era final y firme. Es decir, ya había culminado el procedimiento de revisión que la señora Pesquera Fuentes solicitó. Asimismo, esa segunda pensión alimentaria se hizo efectiva a partir del 2006, fecha en que la recurrida pidió la revisión de la manutención estipulada. Finalizado ese procedimiento, la

aceptación de capacidad económica fue el cambio en las circunstancias que permitió que el tribunal de instancia iniciara un nuevo proceso de revisión que finalizó con la imposición de la tercera pensión alimentaria. A ese momento se debe hacer efectiva la nueva suma de manutención.

## IV

Por los fundamentos esbozados, revocamos a los foros recurridos, en cuanto al cuarto señalamiento de error, y ordenamos que la tercera pensión alimentaria ——impuesta en el 2016—— se retrotraiga al 15 de noviembre de 2011, fecha en que el señor Colón Molina admitió contar con capacidad económica para sustentar a su hija. Devolvemos el caso al Tribunal de Primera Instancia para que continúe el trámite a tenor con lo aquí pautado.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yailin Pesquera Fuentes<br><br>Recurrida<br><br>v.<br><br>Miguel A. Colón Molina<br><br>Peticionario | AC-2016-0056 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de marzo de 2019.

Por los fundamentos expuestos en la Opinión que precede, y que hacemos formar parte de la sentencia, revocamos a los foros recurridos en cuanto al cuarto señalamiento de error y ordenamos que la tercera pensión alimentaria ——impuesta en el 2016—— se retrotraiga al 15 de noviembre de 2011, fecha en que el Sr. Miguel A. Colón Molina admitió contar con capacidad económica para sustentar a su hija. Por consiguiente, devolvemos el caso al Tribunal de Primera Instancia para que continúe el trámite a tenor con lo pronunciado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez no intervinieron. El Juez Asociado señor Feliberti Cintrón está inhibido.

José Ignacio Campo Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Yailin Pesquera Fuentes<br><br>Recurrida<br><br>v.<br><br>Miguel A. Colón Molina<br><br>Peticionario | AC-2016-0058 | |

**SENTENCIA**
**(NUNC PRO TUNC)**

En San Juan, Puerto Rico, a 12 de abril de 2019.

Por los fundamentos expuestos en la Opinión que precede, y que hacemos formar parte de la sentencia, revocamos a los foros recurridos en cuanto al cuarto señalamiento de error y ordenamos que la tercera pensión alimentaria ——impuesta en el 2016—— se retrotraiga al 15 de noviembre de 2011, fecha en que el Sr. Miguel A. Colón Molina admitió contar con capacidad económica para sustentar a su hija. Por consiguiente, devolvemos el caso al Tribunal de Primera Instancia para que continúe el trámite a tenor con lo pronunciado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez no intervinieron. El Juez Asociado señor Feliberti Cintrón está inhibido.

José Ignacio Campo Pérez
Secretario del Tribunal Supremo