EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Liza Ferrer García<br><br>Demandante-recurrida<br><br>v.<br><br>Juan Alberto González<br><br>Demandado-peticionario | Certiorari<br><br>2007 TSPR 66<br><br>170 DPR ____ |

Número del Caso: AC-2002-32

Fecha: 2 de abril de 2007

Tribunal de Apelaciones:

       Región Judicial de Bayamón II-Panel I

Juez Ponente:

       Hon. Jeannette Ramos Buonomo

Abogada de la Parte Peticionaria:

       Lcdo. María de Lourdes Guzmán

Abogada de la Parte Recurrida:

       Lcda. Maritza Miranda López

Materia: Filiación y Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liza Ferrer García

    Demandante-recurrida

       v.                            AC-2002-32     CERTIORARI

Juan Alberto González

    Demandado-peticionario


RESOLUCIÓN

San Juan, Puerto Rico, a 2 de abril de 2007


    Examinada la moción de reconsideración, presentada por la parte demandante-recurrida, se provee no ha lugar.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton se reitera en las expresiones hechas en la Sentencia emitida el 15 de junio de 2004. El Juez Asociado señor Rebollo López emitió Opinión disidente, en etapa de reconsideración.


                         Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Liza Ferrer García

    Demandante-recurrida

       v.                    AC-2002-32     CERTIORARI

Juan Alberto González

    Demandado-peticionario


OPINIÓN DISIDENTE EMITIDA, EN ETAPA DE RECONSIDERACIÓN, POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 2 de abril de 2007

La controversia a la que se enfrentó la Mayoría de este Tribunal al resolver el presente recurso es secuela de los casos <u>Chévere</u> v. <u>Levis I</u>, 150 D.P.R. 525 (2000) y <u>Chévere</u> v. <u>Levis II</u>, 152 D.P.R. 525 (2000).

En el primero de estos casos este Tribunal resolvió que "un alimentante queda exento del requisito de someter información sobre sus ingresos en la Planilla de Información Personal y Económica si <u>acepta</u> que tiene capacidad económica para proveer alimentos, <u>quedando pendiente de resolver solamente las necesidades económicas del alimentista para así fijar la pensión alimentaria</u>

[que corresponde]."[1] Véase: Chévere v. Levis I, ante a las págs. 544-45. Al explicar los fundamentos de su determinación, el Tribunal fue enfático al señalar que la obligación del alimentante de descubrir su situación económica o divulgar sus ingresos se activa afirmativamente únicamente cuando el obligado a alimentar se niega a aceptar o está en duda su capacidad económica. *Ibid.*

A tono con lo anterior el Tribunal concluyó que "cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley" y "sólo resta que el tribunal determine la suma justa y razonable por concepto de pensión alimentaria para los menores". *Ibid.* Finalmente dispuso que esta determinación debe realizarse "a la luz de la evidencia presentada por los menores con relación a sus necesidades y la situación económica de la madre."[2]

A pocos meses de resuelto el caso antes reseñado, las partes presentaron un nuevo recurso de *certiorari* ante este Tribunal. Esta vez la controversia giró en torno a los criterios que deben considerarse al momento de determinar las necesidades del menor alimentista. Ello en vista de que el foro de instancia consideró las

---

[1] Énfasis suplido.

[2] Se aclaró, sin embargo, que esta norma no exime al alimentante de descubrir cualquier prueba que sea necesaria para que el tribunal pueda cumplir con su deber de fijar la pensión alimentaria que proceda.

aportaciones realizadas a los menores previo a la presentación de la demanda y el estilo de vida a que éstos fueron acostumbrados como consecuencia de tales aportaciones. Esto resultó en una pensión alimentaria provisional ascendente a nueve mil dólares mensuales, lo que provocó que el alimentante acudiera al Tribunal de Apelaciones y lograra la modificación de dicha cuantía.

Enfrentado a esta nueva controversia, este Tribunal acogió el análisis realizado por el foro de instancia al concluir que cuando el llamado a alimentar acepta capacidad económica y, por consiguiente, no existe controversia respecto a ésta, podrán analizarse, como parte de la determinación de las necesidades del alimentista: (i) las actuaciones pasadas del alimentante con respecto a los alimentos de los menores; (ii) el "estilo de vida" que a otros hijos menores proporciona el alimentante y (iii) las peculiares necesidades de los menores incluyendo el "estilo de vida" al cual éstos fueron acostumbrados. Véase: Chévere v. Levis II, ante, a las págs. 504-05.

Ahora bien, no conforme con lo antes expresado, y en su afán por proteger --y restaurar-- la suma de $9,000 originalmente adjudicada, el Tribunal amplió el análisis realizado por el foro de instancia para incluir como uno de los criterios a ser considerado el "estilo de vida" que lleva el padre o madre alimentante. Ello sin advertir que, con su actuación, abría las puertas al descubrimiento de

prueba de un criterio que está íntimamente relacionado a la condición económica del alimentante no custodio, la cual, según se reiteró en la propia Opinión, no debe ser objeto de análisis en este tipo de caso.

Tal y como era de esperarse esta equivocada decisión provocó que --como un "boomerang"-- el asunto regresara a este Tribunal en el caso que hoy nos ocupa. En esta ocasión se cuestionó la corrección de una orden emitida por el foro de instancia donde se ordenaba el descubrimiento de los estados bancarios de cualquier cuenta perteneciente al padre alimentante y de todos los retiros en efectivo y cheques girados contra estas cuentas, a los fines de determinar su "estilo de vida".

Como señaláramos anteriormente, en el presente caso el Tribunal se negó a permitir el descubrimiento de prueba solicitado al señalar que "[h]abiendo el alimentante aceptado que tiene capacidad económica para proveer una pensión alimentaria razonable al menor, no es necesario brindar información adicional para determinar dicha capacidad". Explicó que aceptar este tipo de descubrimiento sería "permitir que [el alimentante] someta información sobre sus ingresos, dejando sin efectos la doctrina establecida en Chévere v. Levis I, supra." De esta forma, confirmó lo expresado previamente a los efectos de que en estas circunstancias no procede descubrir prueba sobre la capacidad económica del alimentante y que sólo resta por determinar las

necesidades del menor y la suficiencia económica de la madre para fijar la cuantía de la pensión alimentaria.

Si la Mayoría hubiese limitado su Opinión a las determinaciones antes mencionadas, definitivamente habría corregido el lamentable error incurrido por este Tribunal al resolver el segundo caso de esta saga, donde incluyó el estilo de vida del alimentante en la determinación de las necesidades del alimentista. No lo hizo. En su lugar la Mayoría optó por reiterar los argumentos esbozados anteriormente en cuanto a la viabilidad de utilizar dicho criterio en este tipo de caso. Ello con la única salvedad que de ahora en adelante el escrutinio no deberá realizarse mediante descubrimiento de prueba, sino que el mismo podrá ser "inferido" o "determinado" de la capacidad económica del alimentante.

Como vemos, al resolver el presente recurso nuevamente el Tribunal ignoró el hecho de que el criterio del "estilo de vida" debe aplicar sólo a aquellos casos en que el padre o madre alimentante se niega a aceptar voluntariamente su capacidad económica, por lo que se activan los mecanismos dispuestos por la Ley Especial de Sustento de Menores,[3] para descubrir la información relacionada a los ingresos y así poder determinar su suficiencia de pago.

---

[3] Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 501 *et seq.*

Un análisis de la jurisprudencia anterior de este Tribunal en torno a este tema así lo refleja. En <u>López</u> v. <u>Rodríguez</u>, 121 D.P.R. 23, 33 (1988) --caso en que el alimentante <u>no</u> había aceptado capacidad económica--, expresamos que "al determinar la capacidad económica de un alimentante para proveer alimentos, [un tribunal] no está limitado a considerar únicamente evidencia, testifical y documental, sobre ingresos", sino que "[p]uede, al fijar la cuantía de la pensión, considerar aspectos tales como <u>el estilo de vida que lleva el alimentante</u>, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso." (Énfasis suplido.) En <u>Argüello</u> v. <u>Argüello</u>, 155 D.P.R. 62, 74 (2001) --caso en el que, igualmente, el alimentante <u>no</u> aceptó capacidad económica-- expresamos que, para imputarle ingresos al alimentante, más allá de lo que éste alegue o intente probar sobre el particular, el foro de instancia puede tomar en cuenta <u>el estilo de vida del alimentante</u>, sus propiedades, su profesión y preparación académica, su historial de empleo y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores similares.

Vemos, pues, que siempre que este Tribunal ha utilizado el criterio del estilo de vida en casos de alimentos, <u>lo ha hecho en situaciones en que está en controversia la capacidad económica del padre o madre</u>

alimentante. Recurrir a dicho criterio, como ha hecho la Mayoría, en casos en que el llamado a alimentar ha aceptado suficiencia económica, constituye una interpretación equivocada y confusa que, lejos de ayudar a resolver controversias de alimentos, lo que provocará será arduos y escabrosos litigios que terminarán afectando no sólo al menor alimentista, sino la política pública en general. Un error de este tipo, que impacta negativamente un asunto revestido del más alto interés público, definitivamente, debería ser corregido en esta etapa de reconsideración.

Somos del criterio que el Tribunal --de una vez y por todas y de forma clara y que no deje lugar a dudas-- debe establecer que, en una situación de hechos en que el padre acepta capacidad económica suficiente para proveer una pensión alimentaria razonable a sus hijos menores de edad, no es permisible --de ninguna forma y para ningún propósito-- descubrimiento de prueba sobre el "estilo de vida" del padre o madre alimentante.

Ello no significa, sin embargo, que la parte que solicita los alimentos esté impedida de presentar prueba aliunde sobre ese "estilo de vida", esto es, mediante evidencia independiente que resulta evidente y fácilmente demostrable, para la cual no necesita utilizar los métodos de descubrimiento de prueba.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado