| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL V | | |
| CARLOS DALECCIO MOLINA<br><br>Apelante<br><br><br>v.<br><br><br>LIDELIZ TORRES VIRUET<br><br>Apelada | KLCE202400144[1] | *Certiorari* **acogido como Apelación** procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Núm. Caso:<br>F DI2017-0104 (302)<br><br>Sobre:<br>Ruptura Irreparable |

Panel integrado por su presidente; el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece ante nos el señor Carlos Daleccio Molina (señor Daleccio o apelante) mediante recurso de *Certiorari*[2] presentado el 2 de febrero de 2024, en el que nos solicita la revisión de la *Orden* emitida el 4 de diciembre de 2023, notificada el 5 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante el aludido dictamen, el foro primario denegó una solicitud de modificación de pensión y plan de pago instada por el señor Daleccio.

Por los fundamentos que exponemos a continuación, **confirmamos** la determinación recurrida.

**I.**

Por ser esencial para la mejor comprensión de los asuntos planteados, acogemos los hechos desglosados en la *Sentencia* que este panel emitió el 31 de agosto de 2023, en el recurso

---

[1] El caso de epígrafe se asigna a este Panel Especial conforme a la Orden Administrativa OAJP-2021-086, emitida el 4 de noviembre de 2021, con efectividad a partir del 10 de enero de 2022.

[2] Acogemos el recurso de *certiorari* como una apelación por ser el mecanismo adecuado para la revisión de la determinación recurrida. Sin embargo, por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.

KLCE202300754 entre las mismas partes de epígrafe, la cual recoge el tracto procesal desde sus comienzos, a saber:

*Conforme surge del expediente que está ante nos, el 11 de mayo de 2023, se llevó a cabo la vista final sobre revisión de pensión alimentaria ante la Examinadora de Pensiones Alimentaria (EPA). En dicha vista, se presentó evidencia de los gastos de dos menores [de edad] la[s] cuales son hijas de las partes de epígrafe. Una vez escuchada la prueba y sometido el caso, la EPA emitió su Informe. En este realizó un trasfondo de los ingresos de las partes, así como un análisis de los gastos suplementarios de las menores. De esta forma, la EPA concluyó su Informe con las siguientes recomendaciones al juez Fernando Abreu Arias:*

1. *El **Sr. Carlos Daleccio Molina**, pagará una pensión alimentaria por períodos de:*

   a. *Del 16 de abril de 2021 hasta el 31 de julio de 2021, **$1,688.00 mensual**.*

   b. *A partir del 1 de agosto de 2021, **$2,507.00 mensual**, pagaderos a razón de $579.00 semanal, a través de Asume, mediante orden de retención de ingresos.*

2. *Los **gastos médicos extraordinarios mayores de $50.00, graduación, uniformes, materiales, libros y matrícula escolar**, serán asumidos por las partes a razón de sus respectivos ingresos, donde el padre aportará el **79%** y la madre el **21%**, a ser rembolsados en un término de treinta (30) días, previa notificación, consentimiento y presentación de evidencia de pago. La parte que incurra en el gasto tendrá quince (15) días para remitir el recibo, so pena de entenderse renunciado.*

3. *La **deuda por concepto de retroactividad es de $25,362.00**, fue calculada desde el 16 de abril de 2021 hasta el 31 de mayo de 2023. Se recomienda un plan de pago de $100.00 semanales hasta el saldo de la deuda.*

4. *Se recomiendan $1,000.00 por concepto de honorarios de abogado, a ser satisfechos en o antes de 60 días, mediante pago directo a la madre custodia.*

5. *Las partes deberán conservar evidencia de los pagos realizados de la pensión alimentaria.*

*Así las cosas, el 22 de mayo de 2023, el señor Daleccio presentó una Moción Aceptando Capacidad Económica. Mediante esta, alegó que luego de analizar la prueba presentada por la recurrida, aceptó pagar el cien por ciento (100%) de los gastos razonables de sus hijas menores de edad. En ese sentido, se comprometió a satisfacer dos terceras partes de los gastos relacionados a alimentos en el hogar, gastos de servicio de electricidad y renta. De igual manera, adujo que pagaría la totalidad de los gastos del colegio de las menores, las clases de karate, las tutorías que ya estaban contratadas, los gastos médicos no cubiertos por el plan médico y una cantidad destinada a la compra de ropa.*

*Evaluado estos planteamientos, el TPI emitió una Orden el 25 de mayo de 2023 y notificada el 2 de junio de 2023, en la cual declaró No Ha Lugar la moción de aceptación de capacidad económica fundamentándose en que el caso ya había sido sometido.*

*Así pues, el 30 de mayo de 2023, el TPI dictó una Resolución en la cual acogió las recomendaciones de la EPA y por consiguiente, le impuso al señor Daleccio el pago de una pensión alimentaria mensual de $2,507.00, los cuales serían pagaderos a razón de $579.00 semanal a través de ASUME mediante orden de retención de ingresos. Asimismo, se le impuso el pago de $25,362.00 por concepto de deuda de pensión retroactiva y el pago de $1,000.00 en honorarios de abogados. Finalmente, se ordenó que los gatos médicos extraordinarios mayores de $50.00, graduación, uniformes, materiales, libros y matrícula escolar serian asumidos por las partes a razón de sus respectivos ingresos.*

*En desacuerdo, el 5 de julio de 2023, el señor Daleccio recurrió ante nos y formuló el siguiente señalamiento de error:*

**Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción aceptando capacidad económica en la cual el recurrente aceptó cubrir el 100% de los gastos razonables de los menores.**

Ante la controversia planteada, el 31 de agosto de 2023, este Panel del Tribunal de Apelaciones confirmó la determinación del TPI. El *ratio decidendi* consistió en lo siguiente:

*En el caso de autos, el señor Daleccio presentó su moción de capacidad económica el 22 de mayo de 2023, once (11) días luego de haberse celebrado la **vista final** de esta controversia y haberse evaluado la prueba sobre la capacidad económica de los padres y la necesidad de las menores. De igual manera, dicha moción aceptando capacidad económica se presentó posterior a que la EPA rindiera su Informe. Por ello, al no haberse admitido capacidad económica durante el trámite de este caso, regía lo establecido por la Ley de Sustento de Menores y las Guías. A tenor con el análisis que antecede, colegimos que el TPI no actuó incorrectamente al denegar la moción asumiendo capacidad económica. Por lo tanto, el error imputado no se cometió.*

Así las cosas, referente a la controversia planteada en el recurso de epígrafe, el 13 de octubre de 2023, el señor Daleccio presentó una *Moción Solicitando Modificación de Pensión y Plan de Pago*[3]. En síntesis, alegó que la determinación emitida el 11 de mayo de 2023 por la EPA era errada, al omitir en el cálculo de la pensión alimentaria las deducciones mandatorias por ley. Por tanto, solicitó que se recalculara el monto de la pensión alimentaria, así como el retroactivo resultante.

Por su parte, el 7 de noviembre de 2023, la señora Lideliz Torres (señora Torres o recurrida), presentó *Moción en Oposición a*

---

[3] Véase *Exhibit* VI del Apéndice del Recurso.

*Moción Solicitando Modificación de Pensión y Plan de Pago*[4]. Adujo que la solicitud del apelante estaba a destiempo, debido a que la *Resolución* sobre alimentos es una final y firme.

El 4 de diciembre de 2023, notificada el 5 de diciembre de 2023, el TPI emitió una *Orden*[5], en la cual determinó lo siguiente:

> La pensión fue fijada el 30 de mayo de 2023. La misma fue fijada imputándole el ingreso que informó al momento de solicitar un préstamo y en atención a sus estilos de vida. Luego, recurrió al Tribunal de Apelaciones y nada reclamó sobre la cuantía establecida por lo que la solicitud esta cuando menos a destiempo y no procede en derecho. Cabe mencionar que en su solicitud no aduce hecho alguno que no estuviese presente al tiempo que fue fijada la pensi[ó]n; no hay hechos que adjudicar. Además, la parte en su moción del 22 de mayo de 2023 le pidió al Tribunal que se aceptara la capacidad y que se haría responsable del 100% de los gastos de sus hijas.

En desacuerdo, el 19 de diciembre de 2023, el señor Daleccio presentó una *Moción de Reconsideración*[6], en la que fundamentó su solicitud al amparo de la Regla 49.2 de Procedimiento Civil[7]. Específicamente, sostuvo que del *Informe* de la EPA se desprende un error en el cálculo de la pensión alimentaria, al no descontarle las deducciones mandatorias por ley. Asimismo, indicó que, en el recurso que presentó previamente ante este foro revisor, no solicitó revisión de la pensión porque entendía que el cálculo matemático era susceptible de corrección por el TPI.

El 21 de diciembre de 2023, notificada el 3 de enero de 2024, el foro primario emitió una *Orden*[8] en la que declaró no ha lugar la solicitud de reconsideración.

Inconforme aún, el 2 de febrero de 2024, el señor Daleccio acudió ante nos mediante el recurso de epígrafe, en el que señaló al TPI la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción solicitando modificación de pensión por error matemático en el cálculo.

---

[4] Véase *Exhibit* VII del Apéndice del Recurso.
[5] Véase *Exhibit* VIII del Apéndice del Recurso.
[6] Véase *Exhibit* XI del Apéndice del Recurso.
[7] 32 LPRA Ap. V, R. 49.2.
[8] Véase *Exhibit* X del Apéndice del Recurso.

Examinado el recuso, el 7 de febrero de 2024, emitimos una *Resolución*, en la cual le concedimos un término de diez (10) a la parte apelada para presentar su postura. En consecuencia, el 20 de febrero de 2024, la señora Torres compareció mediante *Oposición a "Certiorari"*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

En nuestro ordenamiento jurídico, la obligación de los progenitores de brindar alimentos a los menores de edad es parte esencial del derecho a la vida consagrado en la Sec. 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1[9]. Por tal razón, los casos de alimentos de menores de edad están revestidos del más alto interés público[10]. Del mismo modo, la pensión alimentaria debe estar fundamentada en las necesidades de los menores de edad, considerando siempre todas las circunstancias del caso, lo cual incluye el estilo de vida de sus progenitores[11]. Esto conlleva hacer un balance entre los intereses del menor y la capacidad económica de los responsables de costear sus necesidades[12].

Con el propósito de agilizar los procedimientos de la reclamación de alimentos, la Ley Núm. 5-1986, según enmendada, conocida como la *Ley Orgánica de la Administración para el Sustento de Menores*[13] (Ley Núm. 5-1986), ordenó la creación y la adopción de unas guías que ayudaran a determinar y modificar las pensiones alimentarias de manera uniforme de acuerdo con el poder

---

[9] *Martínez v. Rodríguez,* 160 DPR 145 (2003).
[10] *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 738 (2009).
[11] *Ferrer v. González,* 162 DPR 172, 180 (2004).
[12] *Pesquera Fuentes v. Colón Molina,* 202 DPR 93, 108 (2019).
[13] 8 LPRA sec. 501 *et seq.*

económico de cada progenitor y las necesidades del alimentista[14]. Cónsono con ello, se aprobaron las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico*, según enmendadas, aprobadas mediante el Reglamento 8529 de 30 de octubre de 2014 (Guías Mandatorias) cuyo propósito es uniformar y facilitar el cálculo de las pensiones alimentarias para menores basándose en criterios numéricos y descriptivos[15].

Las Guías Mandatorias toman en consideración el ingreso de ambos padres y establecen el procedimiento para fijar, modificar o revisar las pensiones alimentarias. El concepto de pensión alimentaria abarca la pensión alimentaria básica y la suplementaria. Por un lado, la pensión alimentaria básica se establece tomando en consideración el ingreso neto de la persona no custodia para establecer su aportación al pago de los gastos mínimos necesarios incurridos para la crianza del alimentista. Estos gastos básicos incluyen los gastos de alimentación, transportación, vestimenta, entre otros[16]. Por otra parte, la pensión alimentaria suplementaria es para cubrir los gastos que corresponden a educación, vivienda y salud[17]. Para ello se toman en cuenta los ingresos de ambos padres y se establece la aportación de la persona no custodia proporcionalmente.

En cuanto al cómputo del ingreso neto mensual, el Artículo 13 de las Guías Mandatorias establece, en lo pertinente, lo siguiente:

> 1. Para obtener el ingreso neto mensual de la persona custodia y el de la persona no custodia, se le resta al ingreso bruto anual, las deducciones mandatorias anuales y las deducciones aceptadas anuales; el resultado se divide entre los doce (12) meses del año.
>
> [...]
>
> 4. En los casos en los que a la persona custodia o a la persona no custodia se le impute un ingreso bruto, se restará

---

[14] 8 LPRA sec. 518.
[15] Art. 3 de las Guías Mandatorias, *supra.*
[16] Art. 4 de las Guías Mandatorias, *supra.*
[17] Dicha partida también incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Art. 4 de las Guías Mandatorias, *supra.*

por concepto de deducciones mandatorias una partida equivalente al 7.65% del ingreso imputado o la suma que efectivamente esa persona haya pagado, la que resulte mayor. No obstante lo anterior, **cuando a cualquiera de las partes se le haya imputado ingresos con base en su estilo de vida o los gastos que mensualmente cubra, no se le hará deducción mandatoria alguna que no sea la que en efecto esta demuestre haya pagado**. [...]. (Énfasis nuestro).

La pensión alimentaria así fijada siempre está sujeta a revisión, y puede modificarse por el cambio sustancial en las circunstancias personales del alimentante o del alimentista. Salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres (3) años, desde la última fijación[18].

**-B-**

La Regla 49.2 de Procedimiento Civil[19], establece el mecanismo procesal disponible para solicitar al foro primario el relevo de los efectos de una sentencia en caso de que exista alguno de los fundamentos establecidos en la misma regla. Se trata de un mecanismo postsentencia creado con el objetivo de impedir que sofisticaciones y tecnicismos, puedan privar los fines de la justicia[20]. La referida Regla dispone específicamente como sigue:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) Error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

---

[18] Incisos (c) y (d) del artículo 19 de la Ley Núm. 5-1986, *supra*, 8 LPRA sec. 518; *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).

[19] 32 LPRA Ap. V, R. 49.2.

[20] *García Colón et al v. Sucn. González*, 178 DPR 527, 539 (2010); *Náter Cardona v. Ramos Muñiz*, 162 DPR 616, 624, (2004).

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

[...]

El precepto procesal de relevo de sentencia tiene el fin de establecer un justo balance entre dos principios de cardinal importancia en nuestro ordenamiento jurídico. Al ponderar la procedencia de una moción de relevo de sentencia, el tribunal debe hacer un balance entre los intereses en conflicto. Por un lado, está el derecho a que toda litigación sea concluida y, por el otro, el derecho a que en todo caso se haga justicia. Independientemente de la existencia de alguno de los fundamentos establecidos en la regla citada, el relevo de sentencia es una decisión discrecional del tribunal. Únicamente está privado de ejercer su discreción en los casos de nulidad o cuando la sentencia ha sido satisfecha. No basta con demostrar la existencia de alguno de los fundamentos contemplados en la Regla 49.2, *supra.* Además, es necesario convencer al tribunal para que ejerza su discreción y conceda el remedio.

Sin embargo, como excepción, nuestro más alto foro ha dictado que "[u]na interpretación liberal de la Regla 49.2 permite considerar una moción de reconsideración como una de relevo de sentencia, aun después de haber transcurrido el término para considerar la reconsideración o aun después de haber advenido final y firme la sentencia, cuando dicha moción cumple con los requisitos establecidos en dicha regla"[21]. Esto significa que "una parte puede librarse de los efectos de una sentencia si logra demostrar la existencia de, al menos, una de las seis causales estipuladas en la regla"[22]. Es decir, el Tribunal de Primera Instancia tiene "discreción

---

[21] *Pagán Navedo y Otros v. Hon. Edwin Rivera* Sierra, 143 DPR 314, 328 (1997); *Reyes v. ELA*, 155 DPR 799 (2001).
[22] *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007).

para considerar la moción [de reconsideración] presentada como una de relevo de sentencia, si esta calific[a] como tal"[23].

Cuando el tribunal examina una solicitud de relevo de sentencia, tiene que considerar ciertos criterios a fin de salvaguardar los derechos de las partes envueltas en el litigio. El juez de instancia deberá estar atento a la existencia de una defensa válida que oponer a la reclamación del peticionario, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la parte promovente de no ser concedido el remedio solicitado[24].

Además, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen el relevo de la sentencia. Si la parte que solicita el relevo aduce una buena defensa, además de alguna de las circunstancias previstas en la Regla 49.2 y el relevo no ocasiona perjuicio alguno a la parte contraria, la balanza debe ser inclinada a favor de la reapertura[25].

La moción de relevo de sentencia debe presentarse dentro de un término razonable que no exceda los seis meses establecidos en la Regla 49.2, *supra.* Cuando la solicitud de relevo está basada en fraude entre las partes tiene que ser presentada dentro del término de seis meses de haberse registrado la sentencia. Sin embargo, ese plazo es inaplicable cuando se trata de una sentencia nula por fraude al tribunal, en cuyo caso, incluso puede presentarse un pleito independiente[26].

**No obstante, una moción de relevo al amparo de esta regla no sustituye una moción de reconsideración o un recurso de revisión**[27]. No puede usarse "para impugnar cuestiones sustantivas

---

[23] *Íd.,* pág. 508; *Reyes v. ELA, supra.*
[24] *Pardo Santos v. Sucn. De Jorge Stella Royo,* 145 DPR 816, 825 (1998).
[25] *García Colón et al v. Sucn. González, supra,* págs. 540-541.
[26] *Íd.,* pág. 543; *Pardo Santos v. Sucn. De Jorge Stella Royo, supra,* pág. 824.
[27] *Vázquez v. López,* 160 DPR 714, 726 (2003).

que debieron levantarse antes de la sentencia como defensas afirmativas, o luego de la sentencia en un recurso de revisión"[28].

**III.**

En su recurso, el señor Daleccio señala que incidió el TPI al declarar no ha lugar su *Moción Solicitando Modificación de Pensión y Plan de Pago,* en la cual solicitó como remedio que se corrigiera un alegado error matemático en el cálculo de la pensión alimentaria constitutivo a la omisión de las deducciones mandatorias. Luego de examinar detenidamente los argumentos esbozados por las partes y los documentos que obran en el expediente apelativo, determinamos que actuó correctamente el foro primario.

Conforme a los hechos antes reseñados, el 30 de mayo de 2023, el foro primario fijó la pensión alimentaria en controversia. Seguidamente, el 5 de julio de 2023, el señor Daleccio recurrió ante nos mediante un recurso de *certiorari* en el que cuestionó la denegatoria del foro primario a una moción asumiendo capacidad económica[29]. No obstante, nada planteó el señor Daleccio respecto al cálculo matemático que llevó a la pensión alimentaria establecida. Posteriormente, en el presente recurso, manifiesta no haber solicitado revisión de la pensión, en ese entonces, por entender que el cálculo matemático era susceptible de corrección por el TPI.

Por tanto, colegimos que el apelante pretende la revisión y corrección de presuntos errores que debieron ser planteados en los correspondientes recursos de reconsideración, apelación o revisión, y que tal solicitud es improcedente a tenor con el derecho establecido al considerar una solicitud de relevo bajo la Regla 49.2 de Procedimiento Civil, *supra.* En ese sentido, el profesor Rafael Hernández Colón opina que la Regla 49.2 "...aplica solo a sentencias,

---

[28] *Rivera v. Algarín,* 159 DPR 482, 490 (2003).
[29] Véase *Sentencia* en el recurso KLCE202300754, emitida y notificada el 31 de agosto de 2023.

órdenes o procedimientos de carácter final en el proceso. No aplica a sentencias cuya finalidad es indefinida como las relativas a custodia o alimentos. Tampoco aplica a resoluciones interlocutorias. El término fatal de seis meses que la misma provee solo tiene sentido al aplicarlo a determinaciones que concluyen el proceso"[30].

Además, en el presente caso, la pensión alimentaria fue fijada imputándole al señor Daleccio el ingreso que informó al momento de solicitar un préstamo y en atención a su estilo de vida. Sobre ello, el Artículo 13 de las Guías Mandatorias dispone expresamente que "cuando a cualquiera de las partes se le haya imputado ingresos con base en su estilo de vida o los gastos que mensualmente cubra, no se le hará deducción mandatoria alguna que no sea la que en efecto esta demuestre haya pagado"[31]. Cabe mencionar que el apelante tampoco nos puso en condiciones para determinar sobre cuáles deducciones mandatorias alega tenía derecho a reclamar.

En virtud de lo anterior, concluimos que la determinación del foro primario es correcta en derecho. En consecuencia, confirmamos el dictamen impugnado por el señor Daleccio.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** la determinación recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[30] R. Hernández Colón, *Practica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., Lexis Nexis de P.R. 2017, a la pág. 453.
[31] Art. .3 de las Guías Mandatorias, *supra.*