EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ismael G. Cuevas Rodríguez<br><br>Peticionario<br><br>v.<br><br>Gisela Miranda Beníquez<br><br>Recurrida | 2026 TSPR 45<br><br>218 DPR ___ |

Número del Caso:  CC-2025-0446


Fecha:  30 de abril de 2026


Tribunal de Apelaciones:  Panel Especial


Representante legal de la parte peticionaria:

    Lcdo. Ángel Y. Nieves Negrón


Representante legal de la parte recurrida:

    Lcdo. Luis A. Pabón Rojas


Materia: Derecho de Familia – Imputación de capacidad económica no puede utilizarse como una sanción procesal ante el incumplimiento con el descubrimiento de prueba en un procedimiento de revisión de pensión alimentaria.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael G. Cuevas Rodríguez<br><br>Peticionario<br><br>v.<br><br>Gisela Miranda Beníquez<br><br>Recurrida | CC-2025-0446 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico, a 30 de abril de 2026.

La controversia ante nuestra consideración nos ofrece la oportunidad de precisar si, en el contexto de un procedimiento de revisión de pensión alimentaria, la imputación de capacidad económica puede ser utilizada válidamente como una sanción procesal ante el incumplimiento con el descubrimiento de prueba. Por los fundamentos expuestos a continuación, respondemos en la negativa.

**I**

El 23 de febrero de 2024, Gisela Miranda Beníquez (señora Miranda Beníquez o parte recurrida), madre custodia del menor G.C.M., presentó una *Moción sobre revisión de pensión alimentaria y otros extremos*, con el propósito de solicitar el referido del caso al Examinador(a) de Pensiones Alimentarias (EPA) para la celebración de una vista sobre revisión de pensión alimentaria. La señora Miranda Beníquez fundamentó su petitorio en que el Sr. Gustavo Cuevas Miranda (señor Cuevas Miranda o parte peticionaria), padre alimentante del menor, en el año 2017 aceptó,

voluntariamente, aumentar la pensión alimentaria de $700 a $800 mensuales y cubrir los gastos escolares. Sin embargo, la parte recurrida esgrimió que dicha suma resultaba insuficiente para sufragar los gastos del menor, tras los aumentos en los costos de vida. A su vez, adujo que el señor Cuevas Miranda adeudaba dos meses de la mensualidad del colegio donde estudia el menor. El 12 de marzo de 2024, el foro de instancia refirió el caso al EPA para la revisión de la pensión alimentaria.

El 5 y 25 de junio de 2024, la parte peticionaria y la parte recurrida se cursaron entre sí, respectivamente, los pliegos de interrogatorios y producción de documentos. La señora Miranda Beníquez sometió sus respuestas el 27 de agosto de 2024. El 26 de septiembre de 2024, el señor Cuevas Miranda informó sus objeciones a las mismas.

Conforme surge del expediente, la vista de revisión de pensión alimentaria fue señalada para el 9 de octubre de 2024. Sin embargo, el 8 de octubre de 2024, la parte recurrida presentó una *Urgentísima moción solicitando sanciones y otros extremos*, en la cual hizo contar que, a pesar de que la vista de revisión de pensión alimentaria estaba señalada para el día siguiente, la parte peticionaria no le había notificado las contestaciones al interrogatorio y producción de documentos cursado el 25 de junio de 2024. A su vez, le informó al foro de instancia las diligencias realizadas para precisar la notificación oportuna de estas, las cuales resultaron infructuosas. Agregó que dicho

incumplimiento provocaría la dilación de los procedimientos en detrimento del menor. Por consiguiente, la señora Miranda Beníquez solicitó que se le ordenara a la parte peticionaria proveer las contestaciones en un término de cinco días, que se le condenara al pago de sanciones y honorarios de abogado, así como que se reseñalara la referida vista.

De conformidad, el 8 de octubre de 2024, el foro primario declaró ha lugar la *Urgentísima moción solicitando sanciones y otros extremos.* Según solicitado, le ordenó a la parte peticionaria cumplir con el descubrimiento de prueba solicitado en un término de cinco días, término dentro del cual también debía pagar una sanción de $500.00 de honorarios de abogados. A su vez, refirió el caso al EPA para que reseñalara la vista de revisión de alimentos y tomara conocimiento de que ello fue provocado por la parte peticionaria.

Al día siguiente, el señor Cuevas Rodríguez solicitó la reconsideración de la referida *Orden*, por cuanto tenía la intención de llevar ante la atención del EPA las controversias relacionadas con el descubrimiento de prueba. Adujo, además, que en más de una ocasión le notificó a la señora Miranda Beníquez que estaba considerando asumir capacidad económica, una vez recibiera toda la información que le requirió en el descubrimiento de prueba. No obstante, indicó que no había tomado una determinación al respecto, toda vez que no contaba con los elementos necesarios para establecer la cuantía real de los gastos del menor. En

particular, ello obedecía a que la parte recurrida no había provisto contestaciones adecuadas al interrogatorio ni incluyó la información requerida por la Planilla de Información Personal y Económica (PIPE). Posteriormente, el 16 de octubre de 2024, la parte recurrida presentó contestaciones enmendadas al referido interrogatorio.

Sin embargo, el 22 de octubre de 2024, el señor Cuevas Rodríguez presentó una *Moción en cumplimiento a la Regla 34.1 de Procedimiento Civil,* en la cual solicitó al foro primario la imposición de sanciones contra la parte recurrida. Asimismo, requirió que se le ordenara producir la documentación acreditativa de todos los gastos del menor desde la fecha de radicación de la revisión de la pensión alimentaria. A tales efectos, adujo que, a pesar de haber realizado esfuerzos razonables para resolver la controversia relacionada con el descubrimiento de prueba, la parte recurrida continuaba incumpliendo al proveer respuestas incompletas al interrogatorio.

El 24 de octubre de 2024, el foro de instancia le concedió un término a la parte recurrida para replicar. Además, **dejó sin efecto la sanción de $500.00 impuesta previamente a la parte peticionaria.** Por último, les apercibió a ambas partes que, de celebrar una vista para dilucidar el asunto del descubrimiento de prueba, impondría severas sanciones económicas a la parte que incumpliera con lo ordenado o con el descubrimiento de prueba.

Posteriormente, el 5 de diciembre de 2024, el foro primario ordenó al señor Cuevas Rodríguez que especificara cuáles preguntas permanecían sin contestar y qué evidencia no había sido provista. Asimismo, enfatizó que el descubrimiento de prueba debía circunscribirse a los gastos razonables del menor. En cumplimiento con dicha *Orden*, el 17 de diciembre de 2024, el señor Cuevas Rodríguez presentó una moción en la cual detalló la prueba que aún no había sido producida, así como las deficiencias identificadas en la ya presentada.

El 2 de enero de 2025, el foro de instancia emitió una *Orden* disponiendo que el descubrimiento de prueba cumplimentado por la parte recurrida fue amplio y lo suficientemente preciso como para que la parte peticionaria aceptara o no capacidad económica. Por consiguiente, le concedió al señor Cuevas Rodríguez un término de cinco (5) días finales para informar su determinación.

El 7 de marzo de 2025, la señora Miranda Beníquez presentó una *Urgentísima moción solicitando remedio*, en la cual informó que la parte peticionaria incumplió con la referida *Orden* y tampoco había contestado el descubrimiento de prueba que le fue cursado, por lo que no se celebró la vista de revisión de pensión alimentaria ante el EPA. Ante esta situación, le solicitó al foro primario que emitiera una orden determinando que la parte peticionaria había admitido capacidad económica e imponiéndole sanciones económicas.

El 10 de marzo de 2025, el señor Cuevas Rodríguez presentó una moción **mediante la cual informó su determinación de no asumir capacidad económica** y, en consecuencia, solicitó la reducción de la pensión alimentaria. En específico, fundamentó su solicitud en cambios recientes en sus circunstancias, como la pérdida de dos contratos con hospicios que constituían una fuente constante y significativa de sus ingresos, el aumento en los gastos escolares y la carga financiera asociada al sostenimiento de su práctica médica. En virtud de ello, **solicitó que la pensión alimentaria se fijara conforme a la Ley Orgánica de la Administración para el Sustento de Menores**, *infra*, **y a las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico**, *infra*.

Asimismo, la parte peticionaria, en cumplimiento con las instrucciones del EPA, presentó una segunda moción acompañada de su evidencia contributiva y la PIPE juramentada. De igual forma, informó haber notificado a la parte recurrida su contestación al primer pliego de interrogatorios.

No obstante, el 11 de marzo de 2025, la parte recurrida presentó una *Moción en cuanto a incumplimiento con el descubrimiento de prueba,* mediante la cual solicitó, nuevamente, la imposición de sanciones al señor Cuevas Rodríguez. En esta ocasión, expuso que dichas contestaciones no eran responsivas, sino que, además, fueron provistas ocho meses después de habérsele cursado el interrogatorio, lo

que, a su juicio, burlaba los procedimientos. Asimismo, arguyó que la parte peticionaria no incluyó documento alguno que revelara sus fuentes de ingresos, ni presentó estados bancarios, estados de tarjetas de crédito, entre otros documentos pertinentes.

El 12 de marzo de 2025, el foro de instancia notificó cuatro órdenes mediante las cuales declaró "no ha lugar" la *Urgente moción informando determinación de incapacidad económica* […] y la *Urgente moción en cumplimiento de instrucciones del EPA* […] presentadas por la parte peticionaria. En cambio, declaró ha lugar la *Moción en cuanto a incumplimiento con el descubrimiento de prueba* presentada por la parte recurrida; y declaró ha lugar la *Urgentísima moción solicitando remedio* presentada por la recurrida. Además, mediante esta última *Orden*, **el foro de instancia determinó que la parte peticionaria admitió su capacidad económica debido a su reiterado incumplimiento con el descubrimiento de prueba.**

El 27 de marzo de 2025, el señor Cuevas Rodríguez presentó una *Moción de reconsideración*, sustentada en que el foro primario no le apercibió que el incumplimiento conllevaría la imputación automática de capacidad económica como sanción. El 22 de abril de 2025, la señora Miranda Beníquez se opuso a la reconsideración del dictamen, pues arguyó que la imputación de capacidad económica en este caso constituyó un ejercicio correcto de la discreción judicial para regular el ámbito del descubrimiento de prueba. El 23

de abril de 2025, el señor Cuevas Rodríguez replicó a la oposición antes mencionada. Sin embargo, la *Moción de reconsideración* fue declarada "no ha lugar" el 28 de abril de 2025.

En desacuerdo, el 27 de mayo de 2025, el señor Cuevas Rodríguez compareció ante el Tribunal de Apelaciones mediante recurso de *certiorari*. En esencia, cuestionó la determinación del foro primario de imputarle capacidad económica como primera medida, sin apercibimiento previo y sin celebración de una vista para dilucidar las controversias sobre el descubrimiento de prueba. La parte peticionaria catalogó dicha actuación como violatoria del debido proceso de ley y constitutiva de abuso de discreción.

El 17 de junio de 2025, el foro intermedio notificó una *Resolución* en la cual denegó la expedición del recurso, tras concluir que el peticionario no logró establecer que el foro primario hubiese incurrido en error alguno que justificara su intervención en esa etapa de los procedimientos. Consecuentemente, devolvió el caso al foro primario para la continuación de los procedimientos.

Inconforme, el 17 de julio de 2025, la parte peticionaria presentó el recurso de *certiorari* que nos ocupa, junto a una moción en auxilio de jurisdicción solicitando la paralización de los procedimientos.[1] En suma, cuestiona la

---

[1] El 31 de julio de 2025, esta Curia proveyó "no ha lugar" a la moción en auxilio de jurisdicción y turnamos la petición de *certiorari* al trámite ordinario. Además, el 8 de diciembre de 2025, la parte peticionaria compareció mediante escrito intitulado *Alegato de la Parte Recurrente*.

determinación del foro intermedio de no ejercer su función revisora ante un planteamiento que involucra un perjuicio procesal y sustantivo actual e irreparable, validando una sanción que trastoca el balance procesal del caso. Además, cuestiona la imputación de capacidad económica como sanción procesal, sin apercibimiento previo y sin agotar medidas menos severas. Al respecto, argumentó que el proceder del foro primario tuvo el efecto de haberle transferido la carga completa del sustento del menor, sin haber considerado su determinación de no asumir capacidad económica y sin haber considerado la prueba documental presentada, vulnerando así el principio de proporcionalidad. Por último, señala que el foro de instancia erró al considerar como amplio y preciso el descubrimiento de prueba proporcionado por la parte recurrida.

En contraste, el 7 de enero de 2026, la señora Miranda Beníquez instó su oposición a la expedición del recurso de *certiorari*. Al respecto, argumenta que el foro primario actuó de manera gradual, proporcional y razonada, por cuanto ofreció oportunidades sucesivas para que se cumpliera con el descubrimiento de prueba, moderó las sanciones previamente impuestas, concedió términos adicionales y advirtió expresamente sobre las consecuencias que acarrearía el incumplimiento. Por consiguiente, aduce que la imputación de capacidad económica no constituyó una sanción automática, sino una consecuencia procesal legítima del patrón de

incumplimiento con el descubrimiento de prueba reiterado por la parte peticionaria.

Tras un concienzudo examen del expediente y de los argumentos planteados por ambas partes, procedemos a exponer el derecho aplicable.

## II

### i.

En nuestra jurisdicción, es norma reiterada que los casos de alimentos de menores están revestidos del más alto interés público. *Ríos Figueroa v. López Maisonet*, 2025 TSPR 86, 216 DPR __ (2025); *James Soto v. Montes James*, 213 DPR 718 (2024). En ese contexto, este Tribunal ha sostenido consistentemente que el criterio rector en este tipo de controversias es el bienestar del menor. Véanse *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62 (2001).

A tenor con lo anterior, el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.*, delimita el contenido de la obligación alimentaria de forma amplia. Así, entre los deberes inherentes a la patria potestad se encuentra la responsabilidad de alimentar al menor y proveerle lo necesario para su desarrollo integral. Art. 590 del Código Civil, 31 LPRA sec. 7242. A su vez, el Art. 653 del mismo cuerpo legal dispone que los alimentos comprenden todo aquello indispensable para la subsistencia, incluyendo el

sustento, la vivienda, la vestimenta, la recreación y la atención médica, conforme a la posición social de la familia. Art. 653 del Código Civil, 31 LPRA sec. 7531. Cuando se trata de menores de edad, ese contenido se amplía para abarcar su educación, las atenciones de previsión acordes a su entorno y los gastos extraordinarios que respondan a sus condiciones particulares. Íd.

Por su parte, la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq*. (Ley de ASUMe), recoge una concepción igualmente amplia del derecho a alimentos, al reconocerlo como parte esencial del derecho a la vida y a la subsistencia. De igual forma, las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 9535 de 15 de febrero de 2024 (Guías Mandatorias), contienen una definición sustancialmente análoga.

Cónsono con ello, este Tribunal ha reiterado que la obligación de alimentar es una obligación personal que cada progenitor debe satisfacer con sus propios recursos y en proporción tanto a su capacidad económica como a las necesidades del menor. *Díaz Rodríguez v. García Neris*, *supra*; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93 (2019); *Figueroa Robledo v. Rivera Rosa*, 149 DPR 565 (1999). En ese sentido, la determinación de la cuantía de los alimentos descansa en el prudente arbitrio del juzgador, quien debe garantizar que

la pensión fijada responda al principio de proporcionalidad. Véase *Santiago, Maisonet v. Maisonet Correa*, *supra*.

De conformidad con lo anteriormente expuesto, el Art. 666 del Código Civil, 31 LPRA sec. 7562, dispone que la cuantía debe fijarse conforme a los criterios establecidos en la legislación especial complementaria. De este modo, el Código Civil remite a la Ley de ASUMe, la cual, a su vez, provee para la adopción de las Guías Mandatorias dirigidas a asegurar que las pensiones se determinen y modifiquen de manera uniforme, tomando en consideración tanto la situación económica de los progenitores como las necesidades particulares del alimentista. *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016).

Así pues, tanto la Ley de ASUMe como las Guías Mandatorias constituyen los principales instrumentos operacionales para la determinación de las pensiones alimentarias. A través de estos mecanismos, y en virtud del principio de proporcionalidad, el ordenamiento jurídico, en materia de pensiones alimentarias, procura uniformidad en la adjudicación mediante la aplicación de criterios objetivos, a la vez que garantiza un balance adecuado entre la capacidad económica de los obligados y las necesidades del alimentista.

ii.

En cuanto al aspecto probatorio, la determinación de la capacidad económica real del alimentante se viabiliza mediante un descubrimiento de prueba amplio, liberal y de carácter compulsorio, el cual cumple una función

instrumental esencial al permitir revelar la situación económica de las partes y facilitar la aplicación correcta del principio de proporcionalidad. Véanse, *Pesquera Fuentes v. Colón Molina*, *supra*; *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). A esos efectos, el Art. 16 de la Ley de ASUMe, 8 LPRA sec. 515, dispone el descubrimiento compulsorio de información mediante el procedimiento judicial expedito.

Ahora bien, la jurisprudencia ha reconocido una excepción a ese esquema cuando el alimentante **admite voluntariamente su capacidad económica** para cumplir con su obligación. En el caso de *Chévere v. Levis*, 150 DPR 525 (2000), resolvimos que un alimentante no custodio que acepta tener capacidad económica, no ostenta la obligación de informar sus ingresos conforme dispone la Ley de ASUMe. Ello, puesto que, al integrar la intención legislativa y la declaración de política pública de dicho estatuto, concluimos que su finalidad era descubrir la suficiencia económica del alimentante en aras de establecer una pensión alimentaria. En función de ello, añadimos que **la Ley de ASUMe se activa cuando se da uno de dos supuestos: que el obligado a alimentar se niegue a aceptar o que esté en duda su capacidad económica.** Íd. En cambio, cuando el alimentante acepta tener capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley. Íd.

La devolución del referido caso al foro primario resultó posteriormente en *Chévere Mouriño v. Levis Goldstein*, 152 DPR 492 (2000), secuela del caso *Chévere v. Levis*, *supra*. En

este, el oficial examinador no permitió el desfile de prueba sobre la capacidad económica o el estilo de vida del señor Levis. Como consecuencia de ello, el foro primario fijó una pensión alimentaria provisional conforme a la cuantía recomendada por dicho oficial examinador.

En esa segunda intervención, hicimos la distinción de que, cuando el alimentante acepta capacidad económica y no existe controversia respecto a esta, la pensión alimentaria debe fijarse considerando "la condición económica, el estilo de vida del alimentante y las peculiares necesidades de los menores incluyendo el estilo de vida al cual éstos fueron acostumbrados". *Chévere Mouriño v. Levis Goldstein*, *supra,* a la pág. 505. En consecuencia, concluimos que, al establecer una pensión alimentaria para un menor, el tribunal no se circunscribe exclusivamente a la evidencia directa, testifical o documental, sobre gastos e ingresos. En cambio, puede valerse de evidencia circunstancial que le permita inferir, como parte de las necesidades del menor, el estilo de vida que le corresponde conforme a la capacidad económica y estilo de vida del progenitor alimentante. *Chévere Mouriño v. Levis Goldstein*, *supra*.

Esta norma fue delimitada posteriormente en *Ferrer v. González*, 162 DPR 172 (2004), donde precisaba resolver si, la parte alimentante que aceptaba tener la capacidad económica para proveer una pensión alimentaria de acuerdo con las necesidades razonables de sus hijos tenía el deber de proveer información sobre sus ingresos, a los fines de

determinar su estilo de vida. Al respecto, particularizamos que, aceptada la capacidad económica para proveer una pensión alimentaria razonable al menor, no procedía el descubrimiento de prueba respecto a su estilo de vida. Más bien, ello se podía determinar o inferir de su capacidad económica.

Posteriormente, en *Santiago, Maisonet v. Maisonet Correa*, *supra*, establecimos que resulta incompatible con *Chévere v. Levis*, *supra*, que un alimentante admita capacidad económica y, una vez fijada la cuantía de la pensión, pretenda que la persona custodia asuma parte de esta. De conformidad, resolvimos que, **aceptada la capacidad económica, el alimentante queda obligado a cubrir el 100% de los gastos razonables del menor.** En ese sentido, la pretensión de la parte alimentante de sufragar únicamente una proporción de los gastos del menor, bajo el argumento de que la persona custodia también debe aportar, "por imperativos de justicia y de principios matemáticos básicos", conlleva la divulgación de sus ingresos, a los fines de permitir la aplicación de las Guías Mandatorias y la correspondiente adjudicación proporcional entre los progenitores. Íd. Cabe resaltar que las necesidades razonables del menor son aquellas que la parte alimentista logra demostrar mediante la prueba desfilada en la vista evidenciaria. Íd.

Luego, las consecuencias de aceptar capacidad económica bajo este contexto fueron resumidas en *De León Ramos v.*

*Navarro Acevedo*, *supra*, de la siguiente forma: (1) el alimentante **queda imposibilitado de impugnar la pensión que en su día se fije al aducir que no cuenta con los recursos necesarios para ello**;[2] (2) la información patrimonial de la persona alimentante que acepta capacidad queda protegida; (3) **se torna innecesario el mecanismo de descubrimiento de prueba dispuesto en la Ley de ASUMe** dirigido a precisar la situación económica de quien acepta tener capacidad, **por cuanto el alimentante queda obligado a satisfacer la totalidad de la pensión adjudicada**. Íd. Esto, a su vez, impide la activación del mecanismo delineado en las Guías Mandatorias para adjudicar porcientos de responsabilidad entre los progenitores. Íd.

En función de lo anterior, únicamente resta fijar la cuantía de la pensión en atención *exclusivamente* a las necesidades del menor. Íd. Ello se logra siguiendo un esquema distinto al pautado en las Guías Mandatorias, pues le corresponde a la persona custodia presentar evidencia de los gastos razonables del menor y del estilo de vida de la parte alimentante, para que eventualmente se calcule el monto total de la pensión a ser satisfecha. Íd.

Como punto neurálgico a la controversia que nos ocupa, en *De León Ramos v. Navarro Acevedo*, *supra*, también precisamos la relación o, si se quiere, la tensión entre el

---

[2] Esta prohibición no le priva de impugnar la cuantía de la pensión por resultar contraria a la prueba o por su irrazonabilidad a la luz de las necesidades de los menores. *Pesquera Fuentes v. Colón Molina*, 202 DPR 93 (2019).

andamiaje normativo provisto por la Ley de ASUMe y las Guías Mandatorias *vis a vis* la figura jurisprudencial de la aceptación de capacidad económica. Allí reconocimos que la Ley de ASUMe tiene como propósito fundamental establecer mecanismos dirigidos a exigir una paternidad o maternidad responsable. Íd. A tales efectos, el trámite dispuesto en dicho estatuto, complementado por las Guías Mandatorias, fue diseñado para compeler a la parte alimentante al cumplimiento con sus obligaciones alimentarias o en los que existe controversia en torno a la cuantía de la pensión que corresponde acorde con las circunstancias. Íd.

En contraste, **la aceptación de capacidad económica constituye una determinación de carácter *voluntario*, mediante la cual la parte alimentante se compromete a satisfacer *todas* las necesidades del menor sin someterse al esquema estructurado previsto en la Ley de ASUMe y las Guías Mandatorias.** Íd. Con ello, "el engranaje provisto en la Ley de ASUME y en las Guías resulta fundamentalmente contrario a la aceptación de capacidad". Íd., pág. 176.

iii.

Según establecimos anteriormente, el Art. 16 de la Ley de ASUMe, 8 LPRA sec. 515, establece el descubrimiento compulsorio sobre la situación económica del alimentante y alimentista. En caso de incumplimiento, ya sea por negarse a descubrir o por contestar en forma evasiva, dicho artículo redirige a las sanciones dispuestas en las Reglas de

Procedimiento Civil, 32 LPRA Ap. V. Art. 16 de la Ley de ASUMe, *supra*.

En virtud de las Reglas de Procedimiento Civil, *supra*, los tribunales ostentan la facultad de sancionar a aquellas partes litigantes que incumplan con el descubrimiento de prueba. *HRS Erase v. CMT*, 205 DPR 689 (2020). En ese sentido, las Reglas de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa brindan varios mecanismos para procurar el fiel cumplimiento de las órdenes emitidas por los tribunales, incluyendo aquellas dirigidas al descubrimiento de prueba. Entre estas, se encuentra la Regla 34.3(a) de Procedimiento Civil, *supra*, la cual contempla el desacato como una medida coercitiva ante la negativa de una parte a obedecer una orden.

Por su parte, la Regla 34.3(b)(3) de Procedimiento Civil, *supra*, dispone que, si una parte deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas. Lo anterior incluye una orden para eliminar las alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para anotar la rebeldía contra la parte que incumpla.

Además, la Regla 37.7 de Procedimiento Civil, *supra*, contempla la sanción económica como medio coercitivo para hacer cumplir las disposiciones sobre el manejo del caso y

las órdenes emitidas por el tribunal. En virtud de esta, cuando una parte o su representante legal incumple con los términos y señalamientos de la Regla, o desatiende cualquier orden judicial sin mediar justa causa, el tribunal viene llamado a imponer una sanción económica.

Por último, la Ley de ASUMe contempla la imputación del ingreso promedio del oficio, ocupación, o profesión de la parte alimentante, conforme a la prueba disponible, en los casos en que se niegue a descubrir la información, no sea responsiva o responda de manera evasiva, de manera que se pueda continuar con el procedimiento, incluyendo hacer una determinación en rebeldía. Art. 11 de la Ley de ASUMe, 8 LPRA sec. 510. Por su parte, el Art. 8 (1)(a) de las Guías Mandatorias establece que se le imputará ingresos a la persona alimentante cuando, entre otras circunstancias, existan indicios o señales de que el ingreso es mayor al que la persona informa. En tales casos, al imputarle ingresos superiores a los que este alegue, el juzgador podrá tomar en cuenta, entre otros factores, el estilo de vida de la parte alimentante, así como sus propiedades, profesión, preparación académica, historial de empleo y de ingresos, experiencia laboral, capacidad y aptitud para generar ingresos. *Argüello v. Argüello*, *supra*, pág. 74.

En síntesis, le concierne al tribunal, dentro del marco de las Reglas de Procedimiento Civil, *supra*, y de la legislación especial en materia de pensiones alimentarias, implementar y hacer valer los mecanismos necesarios para

compeler a las partes a cumplir estrictamente con las órdenes judiciales.

Partiendo del marco normativo delineado, nos encontramos en posición de resolver.

### III

En el presente caso, las partes se cursaron los correspondientes pliegos de interrogatorios y solicitudes de producción de documentos, con el objetivo de descubrir la situación económica de cada uno. A pesar de que la señora Miranda Beníquez sometió sus respuestas, se trabó una controversia en torno a la suficiencia de estas. En el interín, los incumplimientos de la parte peticionaria con el referido descubrimiento de prueba dieron lugar a la intervención del foro de instancia para imponer una sanción monetaria de $500.00, la cual fue posteriormente dejada sin efecto.

Más adelante, el foro primario determinó que el descubrimiento de prueba producido por la parte recurrida fue lo suficientemente amplio y preciso como para que la parte peticionaria decidiera si aceptaba o no capacidad económica.[3] No obstante, el señor Cuevas Rodríguez, ocho meses luego de habérsele cursado el interrogatorio y la producción de documentos, planteó su incapacidad económica por cambios recientes en sus circunstancias y solicitó **que**

---

[3] Destacamos que tal determinación resulta particularmente significativa, por cuanto parte de la premisa acertada de que la aceptación de capacidad económica es una decisión voluntaria que corresponde exclusivamente a la parte alimentante.

**la pensión alimentaria se fijara conforme a la Ley de ASUMe y a las Guías Mandatorias.** A esos fines, acompañó una segunda moción con evidencia contributiva y la PIPE.

A pesar de la presentación de dicha evidencia, la cual constituía el vehículo probatorio idóneo para auscultar su alegada falta de capacidad económica, el foro primario no evaluó su contenido ni celebró la vista correspondiente para dilucidar la capacidad económica real de las partes. Así, lejos de encauzar el trámite hacia el descubrimiento de la situación económica real del alimentante y alimentista, el foro de instancia, a solicitud de la parte recurrida, optó por dar por admitida la capacidad económica de la parte peticionaria, como consecuencia de su reiterado incumplimiento procesal. De este modo, sin que mediara una aceptación voluntaria de capacidad económica, el foro primario dio por concluido el proceso de descubrimiento de prueba y le imputó a la parte peticionaria tener capacidad económica.

Bajo este escenario, nos corresponde examinar si la imputación de capacidad económica puede válidamente emplearse como una sanción procesal ante el incumplimiento con el descubrimiento de prueba. Al responder dicha interrogante, no pasa desapercibido que, del expediente ante nuestra consideración, surge un trámite procesal en el que constan incumplimientos con el descubrimiento de prueba por parte del señor Cuevas Rodríguez que, en última instancia, han afectado el curso ordinario de la controversia. Sin

embargo, el uso de la imputación de capacidad económica como mecanismo sancionador, conlleva consecuencias significativas que vulneran el principio de proporcionalidad y el elemento de voluntariedad, además de que los tribunales cuentan con otros mecanismos para compeler el cumplimiento de sus órdenes. Por lo tanto, no podemos avalar esta práctica. Veamos.

En primer lugar, la *imputación* de capacidad económica como una sanción procesal ante el incumplimiento con el descubrimiento de prueba desvirtúa la naturaleza misma de la *aceptación* de capacidad económica. Esto es, desde sus inicios, la aceptación de capacidad económica, figura jurídica de creación jurisprudencial, respondió a la mera liberalidad de la parte alimentante, quien tuvo que recurrir al mecanismo de una orden protectora bajo la ahora derogada Regla 23.2 de Procedimiento Civil, 32 LPRA Ap. III, para que se le eximiera del cumplimiento con el requerimiento de información que se le había cursado. *Chévere v. Levis, supra*.

El desarrollo de esta figura revela que el denominador común es la voluntariedad. Así lo afirmamos en *De León Ramos v. Navarro Acevedo, supra*, al establecer que **la aceptación de capacidad económica constituye una determinación de carácter *voluntario*, mediante la cual la parte alimentante se compromete a satisfacer *todas* las necesidades del menor sin someterse al esquema estructurado previsto en la Ley de ASUMe y las Guías Mandatorias.** Por lo tanto, se trata de una determinación que adopta la parte alimentante de manera

libre, mediante la cual releva al tribunal de indagar sobre su situación económica y asume la carga de satisfacer las necesidades del menor.

El carácter voluntario de la aceptación de capacidad económica no se justifica meramente por el beneficio de la protección de la información patrimonial de la parte alimentante, sino porque acarrea otras consecuencias importantes. A saber, la parte alimentante **queda imposibilitada de impugnar *a posteriori* la pensión fijada por no contar con los recursos necesarios para ello.** *De León Ramos v. Navarro Acevedo*, *supra*. Además, **se torna innecesario el mecanismo de descubrimiento de prueba dispuesto en la Ley de ASUMe y la aplicación de las Guías Mandatorias**, puesto que **la parte alimentante queda obligada a satisfacer la totalidad de la pensión adjudicada.** Íd. Entonces, al prescindir del esquema de las Guías Mandatorias, el alcance del descubrimiento de prueba quedaría limitado a aquella evidencia que la persona custodia pueda presentar en torno a los gastos razonables del menor y el estilo de vida de la parte alimentante.[4]

A su vez, dicha práctica introduce una distorsión incompatible con el principio de proporcionalidad que rige la fijación de pensiones alimentarias. Como hemos reiterado,

---

[4] Nótese que el imputar capacidad económica y, por consiguiente, prescindir del esquema de las Guías Mandatorias es una determinación contraria a los precedentes en los cuales hemos reconocido que la consecuencia de que la parte obligada a alimentar, como ocurre en este caso, se niegue a aceptar la capacidad económica es la activación de la Ley de ASUMe. Véase, *Chévere v. Levis*, 150 DPR 525 (2000).

la determinación de la pensión exige un análisis concreto que armonice **la capacidad económica del alimentante con las necesidades del menor, lo cual presupone el acceso a información objetiva sobre los ingresos y el patrimonio de las partes.** En estos casos, el descubrimiento de prueba cumple precisamente esa función: permitir al tribunal conocer la realidad económica de **ambos progenitores** para poder aplicar las Guías Mandatorias de forma uniforme y proporcional.

Sin embargo, **cuando se imputa capacidad económica como sanción, el tribunal prescinde de esa información y suplanta el análisis probatorio por una presunción de que se tiene la capacidad para satisfacer todos los gastos razonables del menor.** Ello implica desconocer una variable esencial dentro de la fórmula que rige la adjudicación de pensiones, lo cual impide realizar el cómputo necesario para distribuir proporcionalmente la carga entre los progenitores.

En suma, **la imputación de capacidad económica como sanción constituye una medida atípica que incide directamente sobre el resultado sustantivo del caso,** lo cual resulta incompatible con el propósito del derecho de alimentos **de garantizar una pensión justa, adecuada y proporcional.**

Por otro lado, la Ley de ASUMe provee el trámite, complementado por las Guías Mandatorias, diseñado para regir los casos en que la parte alimentante incumple con sus obligaciones alimentarias o existe controversia en torno a

la cuantía a ser satisfecha. *De León Ramos v. Navarro Acevedo*, *supra*. De ahí que su naturaleza, es **inherentemente forzosa, en tanto impone la divulgación económica y la aplicación de criterios uniformes dirigidos a garantizar adjudicaciones justas y proporcionales.**

No obstante, en caso de incumplimiento con el descubrimiento de prueba, la Ley de ASUMe nos refiere a las Reglas de Procedimiento Civil, *supra*, las cuales contemplan mecanismos específicos como la eliminación de alegaciones, la exclusión de prueba e, incluso, la anotación de rebeldía en casos extremos. Estas herramientas permiten compeler el cumplimiento sin alterar los elementos sustantivos de la controversia. Incluso, para el adecuado manejo de los procedimientos, la Ley de ASUMe también contempla la *imputación del ingreso promedio* de la profesión u oficio de la parte alimentante, por lo que el foro primario no estaba privado de mecanismos para compeler el descubrimiento.

Al examinar el expediente, no surge que la parte alimentante haya aceptado voluntariamente su capacidad económica. Por el contrario, dicha capacidad le fue imputada por el foro primario como consecuencia de su incumplimiento con las órdenes de descubrimiento de prueba. En tales circunstancias, correspondía recurrir a los mecanismos sancionadores disponibles, incluyendo sanciones económicas o procesales más severas, antes de alterar el marco sustantivo de la controversia. Al no hacerlo y optar por imputarle capacidad económica a la parte peticionaria, como

recurso sustitutivo del análisis probatorio, el foro primario abusó de su discreción.

A tenor, concluimos que la imputación de capacidad económica no constituye un mecanismo válido de sanción dentro del marco del derecho de alimentos. Su utilización, además de carecer de fundamento en las normas procesales aplicables, resulta incompatible con el propósito sustantivo de garantizar una pensión justa y proporcional, así como con la normativa que rige esta materia.

## IV

Por los fundamentos antes expuestos, se revoca la *Resolución* emitida por el Tribunal de Apelaciones, así como la *Orden* del Tribunal de Primera Instancia mediante la cual le imputó capacidad económica a la parte peticionaria. Se devuelve el caso al foro primario para la continuación de los procedimientos. En consecuencia, dicho foro deberá emitir las órdenes correspondientes para que las partes actualicen su información económica, diluciden las controversias relacionadas con el descubrimiento de prueba, y señale el caso para la celebración de una vista de revisión de pensión alimentaria.

Se dictará Sentencia en conformidad.


                                        Camille Rivera Pérez
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael G. Cuevas Rodríguez<br><br>Peticionario<br><br>v.<br><br>Gisela Miranda Beníquez<br><br>Recurrida | CC-2025-0446 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Resolución* emitida por el Tribunal de Apelaciones, así como la *Orden* del Tribunal de Primera Instancia mediante la cual le imputó capacidad económica a la parte peticionaria. Se devuelve el caso al foro primario para la continuación de los procedimientos. En consecuencia, dicho foro deberá emitir las órdenes correspondientes para que las partes actualicen su información económica, diluciden las controversias relacionadas con el descubrimiento de prueba, y señale el caso para la celebración de una vista de revisión de pensión alimentaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo